Hovey and others, administrators, &c. appellants, *vs.* Smith and others, respondents.

What articles of property are to be considered fixtures.

A pump and pipe, balances and scales, and a beer pump are *prima facie* personal property, and can only descend to the heir in consequence of being annexed to the freehold in such a manner, and under such circumstances, as to come within the seventh section of the article of the revised statutes relative to the duties of executors, &c. in taking and returning inventories.

As a general rule, *it seems*, that previous to the passage of the act to abolish distress for rent, where a tenant died leaving rent in arrear, the landlord could distrain for rent, after administration granted. But if the landlord was also the administrator of the deceased tenant, he could not distrain. For a landlord, by accepting the office of administrator of his tenant, waives his right to distrain.

A surrogate, upon an accounting by administrators before him, on the application of creditors, is authorized to give a preference to a charge made by the administrators for rent paid on a lease of premises held by the intestate, if it appears to his satisfaction that such preference will benefit the estate. And where a surrogate gives a preference of that nature, and certifies, in his decree, that it appeared to his satisfaction that it would benefit the estate, his decree is conclusive upon that point. And the appellate court will not inquire whether there was any proof of that fact before the surrogate.

In Equity.    Appeal from a decree or sentence of the surrogate of Monroe county, made on the 25th day of June, 1846.

The respondents, as creditors of John B. Pettingill, the intestate, on the 26th of March, 1846, presented their petition to the surrogate, setting forth that letters of administration upon the estate of the intestate were granted to the appellants, Luther H. Hovey and Wealthy Parker, by the surrogate of Monroe, about the 16th of October, 1843; that more than eighteen months had since elapsed; that the respondents were creditors of the intestate, having a demand against his estate still outstanding and unpaid; that the appellant Wealthy Parker, late the widow of the deceased, had since the granting of said letters of administration, intermarried with the appellant Eldred Parker; and praying that the appellants might render an account of their proceedings. Upon which the surrogate issued his citation, requiring the appellants to ap-

pear before him on the 7th of May, 1846.  This citation having been duly served, the petitioners and Eldred Parker and Wealthy Parker appeared, and Hovey did not appear.  Wealthy and Eldred Parker being required to render an account, each made an affidavit; the said Wealthy, that she had never taken any part whatever in the settlement of the estate, the whole business having been done and transacted by Hovey; that she had never collected any money due the estate, nor had in her possession, or under her control, any of the personal estate, except such as was set off to her as the widow of said Pettingill, by the appraisers, which was estimated at $300. Eldred Parker stated in his affidavit, that he was married to the said Wealthy on the 19th November, 1845, and he verified upon information and belief the facts stated in her affidavit, and alleged that he had in no manner interfered with the property, and that he was ignorant of the condition of the estate.

The respondents then proved their demand, amounting to $205,13, and introduced the inventory of the personal property of the estate made on the 25th October, 1844, subscribed by the appraisers and the administrators Luther H. Hovey and Wealthy Pettingill.  The inventory consisted of three schedules, or lists; the first, of articles amounting in the aggregate to $513.  The second, of articles included in a chattel mortgage given by the intestate, in his lifetime, to Charles Stone, to secure the payment of $301,57, and which articles were appraised at $336.  And the third contained a list of articles for the widow and minor children in pursuance of the statute, (2 *R. S.* 83, § 9,) which were not appraised; together with articles of the value of $150, set apart for the widow and minor children, under the act of 11th April, 1842.  (*Sess. L. of that year, p.* 193.)

The respondents, by way of surcharging the inventory, gave evidence to show that the intestate owned personal property not inventoried, to wit; a pump and pipe, balances and scales, and a beer pump, of the value of $40.  And also an unexpired term in a lease of a farm for five months at $25 a month, of the value of $125.  It appeared that on the 3d December,

1842, Pettingill, the intestate, took a lease of a farm of about 80 acres, in the town of Greece, from the appellant Hovey, for five years from the first day of April then next, at a yearly rent of $300, payable on the 1st of November of each year; that Pettingill died on the 5th of October, 1843, and the whole of the first year's rent fell due on the 1st of November, 1843. Pettingill's family continued in possession after the 1st of November. Hovey, the landlord, collected the rent for one year by distraining upon the property of the intestate on the premises leased. The distress warrant was dated November 3, 1843. A large portion of the property which was inventoried was taken and sold upon it for much less than the sum at which it was appraised in the inventory.

The surrogate charged the appellants with the two first lists or schedules of the inventory.

| | |
|---|---:|
| One of . . . . . . . . . . . . . . . | $513,00 |
| Do. included in chattel mortgage, . . . . . | 336,00 |
| Property not inventoried, viz. pump and pipe, . | |
| balances and scales, and beer pump, . . . . | 40,00 |
| Lease 5 months, to April 1, 1844, at $25, . . | 125,00 |
| | $1014,00 |

And credited them as follows:

| | | |
|---|---:|---:|
| Expenses of funeral, and letters of adm. | $33,32 | |
| Paid chattel mortgage, . . . . . . | 301,57 | |
| One year's rent on lease, . . . . | 300,00 | |
| Commission on $1014, at 5 per cent, | 50,70 | 685,59 |

Leaving a balance of               $328,41
to be distributed among 4th class creditors. It appeared that the appellants had paid various debts of the intestate belonging to the 4th class, amounting to $164,35.

On the 25th day of June, 1846, the surrogate made a decree in substance that the amount of the personal estate of the intestate with which the appellants were chargeable was
                                        $1014,00
From which he deducted for preferred debts .
    paid by them, and their commissions, . . 685,59

Leaving a balance of                                    $328,41
And that the remaining debts of the intestate, including the
demand of the respondents, amounted on the 1st day of April,
1844, as follows:

Debts paid by appellants belonging to 4th class,   $164,35
Demands of respondents unpaid, . . . . .            205,13

Amounting in all to                                $369,48
And that of the last sum, the above balance of $328,41, would
pay at the rate of $88\frac{2}{9}$ cents upon each dollar; which would
allow at that rate to the respondents, to be paid by the appel-
lants, $182,33, with interest from 1st of April, 1844. And he
decreed payment accordingly, with costs to the respondents;
which were afterwards taxed at $51,99.

From this decree the appellants appealed, on the follow-
ing grounds. 1. That it did not appear that the pump and
pipe, balances and scales, and beer pump, (articles not invento-
ried,) ever came to the hands of the appellants. That the
pump and pipe were not personal property; and because neither
of these articles were proved to have belonged to the intestate in
his lifetime. 2. Because the surrogate charged the appellants
with the $125, for the rents and profits of the leasehold prop-
erty. 3. Because the appellants were charged with the full
amount of the goods inventoried, when it was proved that most
of them, and all but $60 worth were sold for $300,61; that
the sum for which these articles were sold, deducting the costs
of the distress and sale, together with the appraised value of
those inventoried and not sold under the distress warrant, is all
that should have been charged. 4. Because the surrogate de-
creed the payment, by the appellants to the respondents, of
$182,33 with interest from 1st of April, 1844. 5. Because the
surrogate decreed the payment of respondents' costs.

The respondents, in their answer to the petition of appeal,
complain of the decree on the ground that it gives preference
to the charge of $300 for rent; there having been no proof to
show that such preference would benefit the estate.

*E. Griffin,* for the appellants.

*C. Tucker,* for the respondents.

WELLES, J.   By the 4th subdivision of section 6 of article 1, of title 3, of chapter 6, of part 2 of the revised statutes, (2 *R. S.* 83,) it is provided that " things annexed to the freehold or to any building for the purpose of trade or manufactures, and not fixed into the wall of a house, so as to be essential to its support," shall be deemed assets, and shall go to the executors or administrators as personal estate.   By the 7th section, " things annexed to the freehold, or to any building, shall not go to the executor, but shall descend with the freehold to the heirs or devisees, except such fixtures as are mentioned in the 4th subdivision of the last section."   Whether the pump and pipe, balances and scales and beer pump were annexed to the freehold at all; or if so, whether they were for the purpose of manufacture, does not sufficiently appear by the transcript to justify this court in interfering with the decree of the surrogate in that respect.   They were prima facie personal property, and could only descend to the heir, in consequence of being annexed to the freehold, in such a manner, and under such circumstances, as to come within the seventh section.   It was a question of fact, which the surrogate could best decide ; as was also the question, whether they belonged to the intestate at the time of his death.

I am not able to perceive that any law has been violated, or any injustice done by the surrogate's charging the appellants with rent for five months of the unexpired term on the lease. The 6th section of the act referred to, provides that leases for years shall be deemed assets.   This was a lease for five years, commencing April 1, 1843, at $300 a year, or $25 a month.   The first year's rent became due on the 1st of November, 1843, and has been paid, and the appellants have been allowed the amount by the surrogate.   There were nearly six months of the first year unexpired at the death of the intestate.   There was no direct testimony as to the value of this unexpired term ; but within a

Hovey v. Smith.

year previous, (at the date of the lease,) Pettingill had estimated it at the rate of $300 a year, by agreeing to pay that sum for it, which, in the absence of any proof of its real value, I think was properly taken by the surrogate as the true value.

The surrogate disregarded the proceedings by distress to collect the rent, and charged the appellants with the property inventoried, at the value set upon it in the inventory; which was much lower then it was sold for under the distress warrant. The appellant's counsel contends that the landlord had a right to distrain for this rent, and that therefore the surrogate should have charged the appellants with only what the property was sold for, after deducting expenses; and that even if the right to distrain did not exist, the amount the property brought at the sale was the amount the appellants should have been charged with; as it must have been a public sale, and the amounts bid would be the best criterion of its value. The latter part of this proposition I cannot subscribe to. Every man is presumed to know the law; and it cannot be supposed that purchasers at an unauthorized sale of property, when no title would be acquired, or at most a doubtful one, would be willing to offer as much as if the sale was legal and valid, so as to pass a good title.

The more important question is, whether the proceedings by distress in this case were legal. As a general rule, I am inclined to think, that before the passage of the act to abolish distress for rent, (*Sess. Laws of* 1846, *p.* 369, *ch.* 274,) where a tenant died leaving rent in arrear, the landlord could distrain for rent, after administration granted. It was held in *Hughs* v. *Sebre,* (2 *A. K. Marsh.* 227,) that where a tenant died intestate, the landlord could not distrain *before administration.* I should think the converse of the rule would hold—that the landlord could distrain after administration. (*See also Toller on Ex.* 277, *Phil. ed. of* 1829, § 3. *Id.* 475.)

But however this may be, I am clear that Hovey, the landlord, who is also the administrator in this case, could not distrain. He was appointed administrator on the 16th of October, 1843, and immediately accepted the trust, and entered upon the

*discharge of its duties.* The rent became due on the 1st of November following, some three weeks after the death of Pettingill, his tenant, and the next day the distress warrant was issued, directed to a constable of Monroe county, commanding him to " distrain the goods and chattels of John B. Pettingill, tenant," &c. Without criticising the form of the warrant, however, I think he waived his right to this remedy, by accepting the office of administrator. His duty as such was utterly incompatible with the right to distrain, as landlord of the premises. As the representative of the intestate, he was bound to protect the interests of the estate. The law was sufficiently severe in allowing the landlord to issue his process, in the nature of an execution, for the collection of his rent, in the first instance, without impleading his debtor in a court of justice, and obtaining a judgment for his demand, as other creditors, equally as deserving, were bound to do. The proceeding was a relic of feudalism, and belongs to the history of barbarous ages; and I trust it is never again to become a part of our jurisprudence. But to allow the landlord to administer on his deceased tenant's goods, and then to distrain upon those goods, would be a mockery of justice, too disgusting to be tolerated for a moment. Who would there be to question his right, or to replevy the goods in case of irregularity, or any unlawful or oppressive proceeding on his part ? It follows that the surrogate was right in disregarding the distress warrant, and the proceedings thereon. The respondents were, therefore, entitled to a decree for a *pro rata* share of the assets in the appellants' hands to be administered; and I am not prepared to disturb the decree, because costs were given to the respondents.

The respondents complain that the surrogate gave preference to the $300 claim for rent, over other debts in the fourth class. On that subject, the decree states that it appeared, to the satisfaction of the surrogate, that such preference would benefit the estate. If that was so, the 30th section of the act, (2 *R. S.* 87,) authorized such preference. It will not do for this court, sitting in review, to say it did not appear to the sur-

The People *v.* Beebe.

rogate that such preference would benefit the estate; when he certifies that it did so appear.     Upon the whole, I am satisfied to let the decree stand as it is.

Decree affirmed with costs.

SAME TERM.     *Before the same Justice.*