Wilson v. Baptist Education Society of New-York.

———————◇———————

DUTCHESS GENERAL TERM, January, 1851. *McCoun, Morse, and Brown,* Justices.

WILSON and THOMPSON, executors, &c. *vs.* THE BAPTIST EDU-CATION SOCIETY OF THE STATE OF NEW-YORK.

By the common law, contracts were distinguished as agreements by specialty, or such as were under seal; and agreements by parol, which included such as were reduced to writing, but not under seal.

In a contract under seal, no consideration need appear, to make it obligatory. The seal affixed to the instrument was, of itself, evidence of a sufficient consideration. But, in a contract by parol, a consideration must appear, to give it vitality.

Wilson *v.* Baptist Education Society of New-York.

It was a good defense to an action upon a specialty, that the consideration was illegal, or that it was obtained by fraud; but a mere failure or want of consideration, formed no defense.

The revised statutes, (2 *R. S.* 328, § 97, 2*d ed.*) have modified this rule of the common law; and, in respect to pleading a failure of consideration to an action on an instrument, executed *since* the revised statutes took effect, there is now no distinction between an instrument with a seal, and one without a seal.

But, *it seems,* that those statutes must receive a more restricted construction, when applied to *antecedent* agreements *under seal,* than they will require in relation to contracts entered into since they were passed.

A sufficient consideration for a promise arises wherever, by the act of the *promisee,* a benefit results to the promisor, or, at his request, to a third person; or, if the *promisee* sustains any *loss* or *inconvenience,* or subjects himself to any *charge* or obligation, at the instance of the *promisor,* although such *promisor* obtains no advantage therefrom.

Voluntary agreements and promises, however reasonable the expectation from them of gifts or disbursements, even to public uses, when made without consideration, are not to be enforced as contracts.

An instrument, signed and sealed by the maker, after several recitals, proceeded as follows: " And *whereas,* they [*the promisees*] have resolved, that any person placing one thousand dollars in the funds of the society at their disposal, the interest of which shall be appropriated to the support of a student at their institution at Hamilton, shall be regarded as having endowed a scholarship to be perpetuated for ever. For the above named purpose, I hereby promise to pay, or cause to be paid, to the trustees of the Baptist Education Society of the state of New-York, at my decease, one thousand dollars, to endow a scholarship, to be known by the name of the '*Rebecca* Thompson Scholarship.' " *Held,* that it must be regarded as a promise to make a gift of a sum of money, at a future time, without any consideration to support it. McCoun J. dissented.

Surrogate's courts are courts of peculiar and special jurisdiction. Their powers are defined in title 1, chap. 2, part 3, of the revised statutes.

Claims against the estate of a deceased person, which are disputed or doubted, must be established by the judgment of a court of common law, according to the 36th and 37th sections of title 3, chap. 6, part 2, of the revised statutes; or, in a suit commenced by ordinary process, before they can be regarded as debts against the estate, so as to entitle them to the cognizance of the surrogate.

A surrogate has no jurisdiction or authority, upon the final accounting of an executor, to make a decree for the payment of the money mentioned in an instrument executed by the testator, where the same is disputed, and the liability of the executor to pay the amount denied; and no judgment has been obtained for its recovery.

Wilson *v.* Baptist Education Society of New-York.

This was an appeal from a decree of the surrogate of the county of Dutchess, pronounced on the 11th day of March, 1850, by which the appellants, executors of Rebecca Thompson, deceased, were ordered and directed to pay to the Baptist Education Society of the state of New-York, the respondents, the sum of $1234, being the amount of a certain instrument in writing, under the hand and seal of the said Rebecca Thompson, dated the 19th day of April, 1843, payable to the trustees of the Baptist Education Society of the state of New-York, to endow a scholarship. From this decree the executors appealed. The facts of the case are sufficiently stated in the opinion of the court.

*W. Eno*, for the appellants.

*A. B. Capwell*, for the respondents.

*By the Court*, Brown, J. I shall examine the two principal questions discussed upon the argument of this cause. 1st. Whether the bond claimed by the respondents, for the sum of $1000, and which the surrogate adjudged, by his decree, should be paid out of the proceeds of the estate, is a valid, legal claim, against the appellants. And, 2d. Whether the surrogate, upon the proceedings for the final accounting, had jurisdiction and authority to make a decree for the payment of the money mentioned in the bond, when the same was disputed, and the liability of the appellants to pay the amount claimed; and no judgment had been obtained for its recovery.

The case comes before this court, upon an appeal from a decree of the surrogate of the county of Dutchess. The appellants are the executors of the will of Rebecca Thompson, deceased; who, after the lapse of eighteen months from the time of granting letters testamentary, applied by petition to render a final account of their proceedings, according to the 70th section of the act, (2 *R. S.* 35, 2d ed.) concerning "*the duties of executors and administrators in rendering an account,*" &c. The respondents were made parties to the proceedings, in respect to a legacy given them by the will; and they are also

named in the citation as creditors of the testatrix. Upon the hearing and examination before the surrogate, the respondents presented, and claimed to be allowed and paid, the amount due for principal and interest, upon a bond, dated April 29th, 1843, by which the testatrix promised to pay to the respondents, at her decease, "$1000, to endow a scholarship, to be known by the name of the Rebecca Thompson scholarship." It was sealed in the usual manner; the signature was proved to be in her hand-writing; and the body of the instrument was also proved to be in the hand-writing of Mr. Kendrick, then the secretary of the Baptist Education Society, and who is since deceased. The respondents also gave in evidence, the declarations of the testatrix, that Mr. Kendrick had been there, and she had given a bond, payable at her death, to endow a scholarship in the Hamilton institution. The due execution of the bond, the objects for which it was given, and the consideration—if any—upon which the promise must rest, admit of no dispute. There was no evidence, however, that it had ever before been presented to the executors, as a claim against the estate, or any proceedings instituted, or judgment rendered for its recovery.

The common law distinguishes contracts into agreements by specialty, and agreements by parol. If merely written, and not under seal, they are by parol; and before they can be enforced, a consideration must be proved. The solemnity, and deliberation, observed in the execution of a specialty, gave the transaction under that code, an importance, and a character which was withheld from a simple contract. For, between the two, there was this manifest difference; in a contract by parol, a consideration must appear, to give it vitality; while, in a contract under seal, no consideration need appear, to make it obligatory. The seal affixed to the instrument, was itself evidence of a sufficient consideration. It was a good defense to an action upon a specialty, that the consideration was illegal, or that it was obtained by fraud; but a mere failure, or a want of consideration, formed no defense. (2 *Wilson*, 347. 2 *John.* 177. *Dorlan* v. *Sammis, reported in a note to this case.* 20 *Id.* 130.) The revised statutes have modified this rule of the old law. The dig-

nity of a seal has been greatly impaired, and the distinction between contracts under seal, and contracts by parol, in its most essential aspect, has been taken away. " In every action upon a sealed instrument, and when a set-off is founded upon a sealed instrument, the seal thereof shall only be presumptive evidence of a sufficient consideration, which may be rebutted in the same manner, and to the same extent, as if such instrument was not sealed." (2 *R. S.* 328, § 97, 2d ed.) In *Case* v. *Boughton*, (11 *Wend.* 107,) one of the questions of law was, whether the failure of consideration could be pleaded to an action, brought upon a sealed instrument; Chief Justice Savage delivered an opinion in the affirmative, declaring that in this respect, there is now no distinction between an instrument with a seal, or without one. Such was also the judgment of the court in *Mc-Curete* v. *Stevens*, (13 *Wend.* 527 ;) in *Russel* v. *Rogers*, (15 *Id.* 351;) in *Mann* v. *Eckford's Executors*, (15 *Id.* 502 ;) and in *Tallmadge* v. *Wallis*, (25 *Id.* 107.) In the case of *Mann* v. *Eckford's Executors*, (15 *Id.* 519,) Mr. Justice Bronson noticed the distinction to be taken in the application of the rule laid down in the statute, to sealed contracts made anterior to the time it took effect, and those made since. " So far," he says, " as this statute goes only to the *remedy* of the contracting parties, there can be no very great evil in applying it to sealed obligations, executed prior to the revision. But in making the application, care must be taken that we do not go beyond the form of the remedy, and interfere with the obligation of the contract. It is a familiar principle in jurisprudence, that a statute shall not have a retrospective effect, so as to destroy a vested right; and this principle of natural justice, so far as relates to the obligation of contracts, is recognized and enforced, by the constitution of the United States. This statute must, I think, receive a more restricted construction, when applied to antecedent agreements under seal, than it will require in relation to contracts entered into since the act was passed." The bond to pay the sum of $1000 to the respondents, was made since the passage of the act, and must, therefore, be subject to its provisions, as well in respect to the evi-

dence and the form of the remedy, as to the obligation of the contract. The consideration is open to inquiry and examination, to the same extent as if it was a contract by parol. And if that essential element is wanting, the power of the respondents to enforce it must fail.

The rule in regard to the sufficiency of the consideration, is thus stated by Chitty, in his work on contracts, (*5th Am. ed. p.* 29.) " It may arise *either*—1st. By reason of a benefit resulting to the party promising, or at his request to a third person, by the act of the promisee. 2d. On occasion of the latter sustaining any *loss* or *inconvenience,* or subjecting himself to any *charge* or obligation, at the instance of the person making the promise, although such person obtain no advantage therefrom." If the contract or promise in question is examined by the light of this rule, it will be difficult to find any consideration upon which it can stand. The instrument recites, that the respondent has assumed the charitable education of certain young men for the gospel ministry, and has incurred, and is liable to incur, much expense thereby. But it does not assert that it has taken upon itself this burden, at the request of the obligor, or upon the faith of the undertaking contained in the bond. It also recites a resolution of the respondent, to regard any person who should place $1000 at its disposal, as having endowed a scholarship, to be perpetuated forever. But it will hardly be claimed that an agreement to esteem a person for any particular quality of mind; to regard him as humane, generous or benevolent; or that the promise he makes, or the act which he proposes to perform, shall be deemed an illustration of those virtues, is a sufficient consideration for a bond, or note, or any other executory obligation. Following the recitals, is the promise to pay the sum of $1000 at the decease of the testatrix, to endow the scholarship, to be known by the name of the Rebecca Thompson Scholarship. There is no promise or covenant on the part of the respondent to accept the money, and apply it to the uses of the instrument; and there is also the entire absence of all proof, that any expense had been incurred, or loss or inconvenience suffered by it; or that any act had been done

upon the faith of, or in consequence of the promise contained in the bond, beneficial to the obligor, or to any other person. In the case of *The First Religious Society of Whitestown* v. *Stone,* (7 *John.* 112,) the object was to raise a salary for the support of the Rev. Samuel Snowden, and the written promise was to pay annually to the plaintiffs the sum named, so long as Mr. Snowden administered the gospel in the society. The promise was held good, because it was made upon the consideration, that Mr. Snowden should administer the gospel, in the manner, and at the place indicated, which the proof showed had been done. *McAuley* v. *Billenger,* (20 *John.* 89,) was an action of assumpsit upon a subscription paper, to pay $25 to the defendants in error, who were a committee appointed to receive subscriptions to repair, and to contract for the repairs, of a church. The court held the contract entered into by the defendants in error, to repair, and the repairs themselves, which were proved to have been already commenced, a good consideration for the promise. These are cases where the promisee subjects himself to some charge or obligation, at the instance of the party making the promise. The promise of the testatrix, is to pay $1000, to endow a scholarship, to be known by a particular name, and there is nothing in the instrument, or in the proof, to indicate that any act had been, or was to be done, by the promisee, or obligee, until the money was paid, and then it was to be devoted to the uses indicated. *Stewart* v. *The Trustees of Hamilton College,* (2 *Denio,* 403,) was an action upon a subscription paper, by which the plaintiff in error, and others, severally promised to pay to the defendants in error, the sums set opposite their several names, upon condition, 1st. That the money should be invested as a productive fund, and the interest applied to the payment of the salaries of the officers of the institution. And, 2d. That the aggregate contributions, or the subscriptions of responsible persons, should, by a given day, amount to $50,000. It was objected, that the promise was a *nudum pactum;* there being no consideration to support it. The judgment of the supreme court was against this objection; and it is worthy of observation, that Chief Justice Nelson, who de-

Wilson v. Baptist Education Society of New-York.

livered the opinion, (*see* 2 *Denio*, 409,) states the substance of the contract thus: " Stewart agrees, if the trustees will procure subscriptions to the amount of $50,000, including his own, and invest the same for the benefit of the institution, he will pay the $800. The trustees consent, and perform the condition; and the labor and expense of procuring the subscriptions, and investing the fund, constituted loss or damage to the trustees, and thus brought the case within the definition of a good consideration." If the contract had been of the form into which the chief justice translates it, his legal deduction could not be gainsaid. The court of errors did not, however, see it in the light which he did; for the judgment was reversed, upon the ground that it did not appear from the paper, or the proofs, that the trustees were to be at the labor and expense of procuring the subscriptions referred to by the chief justice, as constituting the loss or damage, within the definition of a good consideration. The rule laid down in *Phillips' Limerick Academy* v. *Davis*, (11 *Mass. Rep.* 113,) is there quoted with approbation. It is this : · " That voluntary agreements and promises, however reasonable the expectation from them of gifts, or disbursements, even to public uses, when made without consideration, are not to be enforced as contracts." These authorities are—in my judgment— decisive of the question, and the bond must be regarded as a promise to make a gift of a sum of money, at a future time, without any consideration to support it. After the very able and elaborate investigations which the law of gifts—both *causa mortis*, and *inter vivos*—has recently undergone in this court and the court of · appeals, in the case of *Harris* v. *Clark*.(a) it would be idle to attempt to prove, that a donor's own note, bill of exchange, or other written promise to pay a sum of money, can not become the subject of a valid gift, so as to enable the donee to claim and recover the money from the donor, or his representatives. Those who are curious in such learning, will find the authorities collected, and their principles illustrated and enforced, in the opinion of Mr. Justice Gridley, in 2 *Barb.*

(a) Reported in 2 *Barb. S. C. Rep.* 94; and in 3 *Comst. Rep.* 93.

Wilson *v.* Baptist Education Society of New-York.

*S. C. Rep.* 96; and in the opinion of Mr. Justice Ruggles, in 3 *Comst.* 110, &c.

Surrogate's courts are courts of peculiar and special jurisdiction. Their powers are defined in title 1, chapter 2, part 3d of the revised statutes : (2 *R. S.* 220, 1*st ed.*) "To direct and control the conduct, and settle the accounts of executors and administrators : To enforce the payment of debts and legacies, and the distribution of intestates estates," are powers expressly given to the surrogate, and enumerated in the 3d and 4th subdivisions of the 1st section of the title referred to. Before the revision of the statutes, suits in the courts of common law, to recover and collect debts against the estates of deceased persons, were costly and cumbersome, and perplexed by a system of pleadings and entries, the names and forms of which are now almost forgotten. Nor were there any means known to the law for a final settlement of the accounts of executors and administrators, and a distribution of the assets, without resort to a bill in chancery. It was to provide a remedy for these defects that the revisers introduced, amongst others, the powers to which I have referred. The words " to enforce the payment of debts," would seem, at first sight, to imply authority to adjudicate upon the existence of a demand made against the estate by a person claiming to be a creditor, which was disputed and denied by the executor or administrator. It will be found, however, upon a careful examination, that no such power can be justly claimed for the surrogate. The courts of common law, before the revision, afforded every facility for the liquidation of disputed and doubtful claims against the estates of deceased persons. In respect to the mode of ascertaining who were and who were not creditors, there was no cause of complaint. The old law, however, marshalled the debts into classes, each class, in the application of the assets, being entitled to a priority over others of an inferior degree, according to the order in which they stood. And debts which assumed the form of a judgment against the executor or administrator were thereby entitled to a priority of payment over all other debts of the same class. And where there were several judgments for debts

of an equal degree, they were also entitled to claim payment in the order of their priority. In suits prosecuted to recover debts due from an estate, it was necessary for the protection of the administrator or executor that the pleadings should disclose its real condition—whether it had been fully or partially administered—whether debts of a higher degree than that in suit, or judgments upon debts of an equal degree, against the executors or administrators, were unpaid. The consequences were constant danger and insecurity to the executor or administrator, and gross injustice to the mass of the creditors. It was the main purpose of the revision to remove these deformities from the system, and to substitute in their place a plain mode of proceeding, which should secure a prompt, just and impartial distribution of the assets amongst the creditors, legatees, and next of kin, and to relieve the executors or administrators from all further liability in regard to the execution of their trust. The powers of the courts of common law to liquidate the debts, and to determine who were entitled to claim as creditors, were at the same time modified and enlarged. Section 3 of title 3, chapter 6, part 2, (2 *R. S.* 88, 1st *ed.*) provides for the publication of a notice, requiring persons having claims to present the same, with the vouchers, within a given time, to the executor or administrator. Section 35 provides that he "may require satisfactory vouchers in support thereof, and also the affidavit of the claimant," that the claim presented is justly due. And whenever he doubts the justice of any claim so presented, section 36 empowers him to enter into an agreement in writing with the claimant, to refer the matter in controversy to three disinterested persons, to be approved of by the surrogate ; and upon filing such agreement and approval in the office of one of the clerks of the supreme court, a rule may be entered referring such matter to the persons named. Section 37 provides for the hearing before the referees, for the filing of their report, and the confirmation thereof, and the entry of judgment thereon—not in the surrogate's court—but in the court where the rule was obtained. And the same is declared to be as effectual as if it had been rendered in a suit commenced by

ordinary process. The omission of a creditor to present his claim within six months after the first publication of the notice is made a complete justification, to the executor or administrator, for distributing the estate in the same manner as if no such claim existed. These several provisions sufficiently indicate the intention of the legislature, that claims disputed or doubted must be established by the judgment of a court of common law, according to the 36th and 37th sections, or in a suit commenced by ordinary process, before they can be regarded as debts against the estate, so as to entitle them to the cognizance of the surrogate. This intention is also manifested by the provisions of the 38th section, which put a limitation upon suits against executors and administrators, unknown before the revision. If a claim be exhibited to the executor or administrator, and disputed or rejected, and it shall not be referred, the claimant shall within six months after such dispute or rejection, "commence a suit for the recovery thereof, or be forever barred from maintaining any action thereon. And no action shall be maintained thereon after the said period, by any other person deriving title thereto, from such claimant; and any executor or administrator may on the trial of any action founded on such demand, give in evidence in bar thereof under a notice annexed to the general issue, the fact of such refusal and neglect to commence a suit." The words "commence a suit," have a definite legal signification, and mean the suing out of process, or originating proceedings whereby an action in a court of law or equity is instituted to establish some right, or redress some wrong. The application made to the surrogate by a creditor, legatee, or one of the next of kin, under the 52d section of the title to which I have referred, that the executor or administrator render an account of his proceedings; or by the executor or administrator himself under the 60th section to have the same finally settled; or under the 70th section to render a final account, is not the commencement of a suit in the sense in which the term is used in the 38th section. The suit, to be commenced is a suit for the recovery of the claim which has been exhibited, and disputed or rejected, and in which the only

proper parties are the claimant on the one side, and the executor or the administrator on the other. And it is to be prosecuted in a court where the forms of proceeding will admit of certain facts being given in evidence on the trial, under a notice annexed to the general issue. This can not be the surrogate's court, where there are no pleadings, no jury, no power to order a reference to receive or confirm a report, or to enter up a judgment. The 71st section declares that whenever an account shall be rendered and finally settled, under any of the sections to which I have referred, the surrogate shall make a decree for the payment and distribution of the estate among the creditors, legatees, widow and next of kin; " and in such decree shall settle and determine all questions concerning any debt, claim, legacy, bequest or distributive share, to whom the same shall be paid, and the sum to be paid to each person." It is evident that the validity of a claim against the estate, and which has been disputed or rejected, and whether the claimant is entitled to be classed amongst the creditors, is not one of those questions which the surrogate may determine by virtue of this section; because the power therein given is not to be exercised and does not vest in him until the accounts of the executor or administrator have been rendered and finally settled, and the amount to be paid and distributed ascertained. The 18th section of title 5th of the same chapter, employs language of similar import, and confers upon that officer authority "upon the application of any creditor," to decree "the payment of any debt or a proportional part thereof," after six months from the time of granting letters, &c. The word "creditors" means persons having claims that are recognized and admitted, or such as have been ascertained and established by the judgment of a competent court, and not those that have been disputed or rejected. In the case of *Kidd* v. *Chapman*, (2 *Barb. Ch. Rep.* 414,) the claim was upon a judgment against the testator. The creditors applied to the surrogate by petition and prayed for an account of the administration of the estate, and for a decree for the payment of the amount due upon the judgment. Upon the return of the citation, the executor and executrix disputed the

Wilson *v.* Baptist Education Society of New-York.

debt and refused to pay, and insisted that the surrogate had no power to enforce payment until the debt had been established by a judgment against them. The case came before the chancellor upon an appeal, and after referring to the 18th section of title 5th, he says, " I think the surrogate had power to decree the payment of the respondents' judgment, although the executor and executrix did not ask for a final settlement of their accounts." Upon reading his opinion, it will be seen, however, that those provisions of the statutes which influence, if not entirely govern, the determination of the question, were not brought to his notice; and I entertain no doubt that had they engaged his attention with those to which he did refer, he would have been brought to an opposite conclusion.

It is not asserted that judgment had been obtained upon the bond, which is the subject in controversy in this appeal. Nor is there any proof that the executors had assented to and recognized it as a debt due by the estate. The evidence is, that at the time of the final accounting, the respondent claimed to have it allowed as a debt due to them, and the executors thereupon disputed it, and denied that the estate was in any manner liable therefor. From that moment, I think, the surrogate's power over it, in the proceeding then pending before him, ceased; and he had no authority to take cognizance of the claim, or to make any decree for its payment, until its validity should be established in another forum.(*b*)

I am of opinion, that so much of the surrogate's decree as directs the payment of the sum mentioned in the bond, with the interest, and adjudges it to be a debt due from the estate, should be reversed, with the costs of this appeal to the appellants.

Morse, J. concurred in the opinion as to the first point, and expressed no opinion as to the second.

McCoun, J. dissented.

                              Decree reversed, with costs.

(*b*) See also, on this point, the opinion of Justice Harris in *Magee* v. *Vedder*, (6 *Barb. S. C. Rep.* 352.)