CORNELIUS R. DISOSWAY, administrator &c., *appellant, vs.* THE BANK OF WASHINGTON, *respondent.*

The statute, which recognizes the right of a creditor to call for an account by an executor or administrator, and gives to the surrogate the power to decree the payment of a debt, or any part of it, is to be understood as applying to *undisputed* debts, only.

The statute nowhere, in express terms, confers upon the surrogate the power to adjudicate upon the existence, validity or amount of a debt claimed against the estate of a decedent, upon a final settlement, where the debt claimed is disputed by the executor or administrator. And a surrogate should not assume the exercise of such power by inference or implication.

The legislature intended that jurisdiction over those questions should remain exclusively in the courts of common law and equity, where it appropriately belongs.

APPEAL from a decree of the surrogate of Livingston county made on a final settlement of an administrator's account. On the 7th day of November, 1812, Charles Carroll and Daniel Carroll, then of the city of Washington, executed and delivered to Charles Carroll of Carrollton, of the city of Annapolis in the state of Maryland, their joint and several bond in the penalty of $11,266.88, conditioned for the payment of $5,633.44, with interest. The obligor, Charles Carroll, afterwards removed to the county of Livingston in the state of New York, where he died prior to the year 1839, but the case does not state the time of his death. He is called in the papers, Charles Carroll of Bellevue. Some time after the execution and delivery of the bond, Charles Carroll of Carrollton, the obligee, died in the state of Maryland, leaving a will, in which Emily McTavish was appointed his executrix, to whom letters testamentary were issued, according to the laws of Maryland. It does not appear when the obligee died, excepting that Mrs. McTavish was acting as his executrix some time prior to November 11, 1839. In that year, Mr. Disosway, the appellant, being an attorney and counselor at law, &c., residing in the city of New York, was employed on behalf of Mrs. McTavish to collect the moneys due on said bond, against the estate of Charles Carroll of Bellevue. In order to institute proceedings in the courts of this state, against the estate of the deceased obligor, an admin-

istrator upon the estate of Charles Carroll of Carrollton had to be appointed here. Accordingly, the appellant, on his own application, and' with the concurrence of Mrs. McTavish, was, on the 11th day of November, 1839, duly appointed by the surrogate of the said county of Livingston, administrator, with the will annexed, of the said Charles Carroll of Carrollton, and soon afterwards commenced an action in his own name as such administrator in the late court of chancery, against Charles H. Carroll, the executor of the will of Charles Carroll of Bellevue, to recover the moneys secured by said bond. The defendant in that action appeared and put in an answer, proofs were taken and other proceedings had, until the cause was brought to a final hearing in the present supreme court at a general term of the 7th district, held at Auburn, in the year 1850, upon which the complainant's bill was dismissed by the judgment of the court. On appeal from that decision, the judgment of the supreme court was reversed by the court of appeals, and judgment ordered for the complainant for the amount claimed, with costs in the supreme court and court of chancery. The suit was commenced in the court of chancery by Mr. Disosway in his own name as solicitor in person, and he acted in the suit as his own solicitor, until it was decided against him by the supreme court. After that, and upon the appeal, and until the decree was finally satisfied, Mr. Henry R. Selden appeared and acted as attorney and counsel for the appellant, Disosway, in the court of appeals, and as such, received the amount of the decree, and distributed and paid out the same as hereinafter mentioned.

In the year 1842, and while the action of Disosway, administrator, &c. against Carroll, executor, &c., was pending in the court of chancery, the bond upon which the action was brought, was assigned by Mrs. McTavish to the Bank of Washington, a foreign corporation located in the city of Washington; after which, the correspondence of Disosway on the subject, was with the president and other agents of the bank. The suit was carried on by and in the name of Disosway, administrator, &c., after the assignment, for the benefit, and at the expense, of the bank. There was no evidence of any indebted-

ness of the estate of Charles Carroll of Carrollton to the Bank of Washington. After the money came into the hands of Mr. Selden on the judgment, which amounted, including costs, to $13,161.84, he paid to the bank $11,181.13. He retained for his own services and disbursements, by consent of the bank, $579.89, and the balance, $1344.44, he paid over to Disosway, the plaintiff in the suit, which the latter claimed to retain for his own costs, fees, expenses and commissions. On the 5th day of December, 1853, the Bank of Washington, claiming to be a creditor of the estate of Charles Carroll of Carrollton, deceased, presented a petition to the surrogate of the county of Livingston, against the said Disosway, administrator as aforesaid, praying that he be required to render an account, &c., upon which he was cited by the surrogate to appear on the last Monday of January, 1854, to render an account, &c. On the day last mentioned, Disosway appeared and put in his answer to the petition. 1. Denying the corporate existence of the petitioner. 2. Denying that the Bank of Washington was a creditor of the estate of Charles Carroll of Carrollton, deceased; and 3. Denying that the petitioner had ever applied to him for an account of his proceedings, &c. The proceedings were then adjourned from time to time, until December, 1, 1854, when the parties appeared before the surrogate by their counsel, and evidence was given upon the issues made by the said petition and answer. No evidence was given tending to show that the Bank of Washington was a creditor of the estate of Charles Carroll of Carrollton. The surrogate thereupon, on the 2d of December, 1854, made an order, by which, after reciting the proceedings before him, it was ordered that Disosway render an account, &c. according to the provisions of the revised statutes, title 3, part 2, chap. 6, art. 3, §§ 59 and 60, &c., and appointing the 20th day of February, 1855, for the hearing and settlement of the account; and the further hearing was adjourned until that time. On the day last mentioned, Disosway presented a petition to the surrogate, praying a citation for a final settlement, &c., and such citation was accordingly issued returnable June 1, 1855. On that day Disosway appeared in person, and the Bank of Wash-

ington appeared by counsel; when the appearance by said bank was objected to, on the part of Disosway, on the grounds, 1st, that it did not appear that the Bank of Washington was a corporation; 2d, or that said bank was a creditor of the estate of Charles Carroll of Carrollton; and 3d, that it was not shown on what ground the bank claimed to be a creditor, or to what amount, or how it was interested, to entitle it to appear at the accounting. The counsel for the bank then offered and read in evidence the petition and answer, and the order of the surrogate made thereon, of December 2, 1854, and the decree in the case of Disosway, administrator, &c. *v.* Charles H. Carroll, executor, &c. before mentioned. The surrogate thereupon decided that by the order made by him on the 2d day of December, 1854, the right of the Bank of Washington to appear on the accounting and contest the same, were established, and overruled the objection. The proceedings then went on, and evidence was taken. The principal matter in dispute appears to have been the amount the present appellant was entitled to retain out of the money collected of Charles H. Carroll as executor of Charles Carroll of Bellevue, on the said bond. The surrogate made a final decree, in substance adjudging that there was in the hands of Disosway as administrator, &c. unaccounted for, after deducting all his just claims for costs, expenses and commissions, the sum of $700, which, with interest thereon from July 15, 1853, belonged to, and was ordered to be paid to the said Bank of Washington. From that decree this appeal was brought. All other facts necessary to be stated appear in the opinion of the court.

*O. Hastings*, for the appellant.

*Jno. Pomeroy*, for the respondent.

*By the Court*, WELLES, J. The order of the 2d of December, 1854, directing the appellant to render an account, &c., was not appealed from within thirty days, and cannot, therefore, be reviewed on this appeal, which was not taken until

after the lapse of thirty days from the time the order was made. (2 *R. S.* 610, §§ 105, 106 and 107. *Bronson* v. *Ward*, 3 *Paige*, 189.) Upon that order being made, the appellant petitioned the surrogate for a final settlement, in pursuance of 2 *R. S.* 93, § 60, &c., and proceedings were had accordingly for that purpose. Upon the hearing of the matters of that petition, one question raised and decided was, whether the respondent was entitled to appear and contest the account. The surrogate held, upon the strength of the order of the 2d of December, 1854, and without any new evidence of a right to appear, that the respondent was entitled to appear and contest the account. The order simply adjudged that the respondent was bound to render an account. It did not determine, either in express terms or by necessary implication, that the respondent was a creditor of the estate of Charles Carroll of Carrollton. But it followed, I think, as a necessary consequence, that the respondent had the right to appear and contest the account. The proceeding for an account was originally instituted upon the application of the respondent, who, although not a creditor of the estate of Charles Carroll of Carrollton, may be said to have had an interest in the result of the accounting. And even if, in strictness, the respondent was not entitled to appear and contest the account, the ruling of the surrogate, admitting it to do so, could not, of itself, be an error for which the final sentence or decree should be disturbed. It was at most a question of practice, which was under the control of the surrogate, and did not necessarily affect any material question in the case. There was no point made upon the argument of this appeal, upon the question of the corporate existence of the respondent. I think, therefore, upon the whole, that there was no error in the decision of the surrogate, in allowing the respondent to appear and contest the account. The important question, however, remains to be considered.

Assuming that the respondent, by reason of its relations to this demand, should, for the purposes of these proceedings, be regarded in the light of a creditor of the estate of Charles Carroll of Carrollton, the existence of any demand in its favor

upon the fund now in the hands of the appellant, and the extent or amount of such demand, if any existed, was denied by the appellant; and those were the questions principally litigated before the surrogate. There was no dispute in regard to the amount of money received by the appellant, nor as to the manner in which it had been disposed of by him, except in regard to $750 of it. This amount the appellant claims belongs to him, for services and disbursements in the suit in equity against the estate of Charles Carroll of Bellevue, and that he has a lien upon it for those services and disbursements, and a right to retain and apply it in satisfaction of such lien. If such claim is valid, the respondent either is not a creditor, or interested at all, or not to the extent of the amount in controversy. Upon this question, in my judgment, the surrogate had no jurisdiction to decide. Where the statute speaks of the rights of a creditor to call for an account, and gives the power to the surrogate to decree the payment of a debt, or any part of it, it must be understood to apply to *undisputed debts*. (*Wilson* v. *Baptist Ed. So. of N. Y.*, 10 *Barb.* 308 *to* 316, *&c. Dayton's Surrogate, ed. of* 1855, *pp.* 507, 8, 9, *opinion of Ogden, surrogate, in the case of the estate of John Kent.*) I am aware that there has been a want of uniformity of decision upon this question, as will appear from Mr. Dayton's treatise referred to, where the learned author has collected and reviewed all the cases on the subject. (*Id.* 507 *to* 523.) The statute nowhere, in express terms, confers upon the surrogate the power to adjudicate upon the existence, validity or amount of a debt claimed against the estate of a testator or intestate, upon a final settlement, where the debt claimed is disputed by the executor or administrator; and a surrogate should not assume the exercise of such power by inference or implication. The legislature, I am satisfied, never contemplated that it should be done, but, on the contrary, intended the power to remain exclusively in the courts of common law and equity, where it appropriately belongs. To allow such jurisdiction would be to confer upon the surrogates' courts the power to hear and determine nearly all disputes and controversies aris-

ing upon contracts of every description, with deceased parties, whose estates are in the hands of executors or administrators.

In ordinary cases of final settlements, the surrogate is directed, if it shall appear that any claim exists against the estate, which is not due, or upon which a suit is pending, to allow a sum sufficient to satisfy such claim, or the proportion to which it shall be entitled, to be retained for the purpose of being applied to the payment of such claim when due, or when recovered, or of being distributed according to law. (2 *R. S.* 96, § 74.) That the previous 71st section by which the surrogate is required to settle and determine all questions concerning any debt, claim, legacy, bequest or distributive share, &c., does not include the power to adjudicate a disputed claim, is shown in a manner satisfactory to me, in the opinion of Ogden, surrogate, to which I have referred. If it were otherwise, a surrogate might determine issues upon the genuineness of the signature to a note which was the evidence of a claim ; of fraud and undue influence in the procurement of an obligation upon which the claim was founded ; of the capacity of the testator or intestate at the time of the transaction upon which his estate is sought to be charged; of payment, of set off; of recoupment, and, indeed, nearly all the questions which arise in actions upon contracts in courts of record. Before such extensive common law powers can be exercised by surrogates, the legislature should manifest their intention to that effect in more unequivocal language than they have yet used, or, as I apprehend, they will soon use.

But the respondent in this case was not a creditor of the estate of Charles Carroll of Carrollton, so as to be entitled to a decree from the surrogate, even if the claim had not been disputed. It was in no sense a creditor of that estate. The estate of Charles Carroll of Bellevue was the respondent's debtor from the time of the assignment of the bond, until the judgment against the latter estate was satisfied ; and after that, the appellant and respondent held a relation to each other, of attorney and client, or of trustee and *cestui que trust ;* precisely in this view, like the assignee of a chose in action not

Disosway *v.* Bank of Washington.

negotiable, before the code, and the attorney who prosecutes it in the name of the original creditor, and receives the money. It is, indeed that very case in substance, only differing from it in the circumstance that, in the present case, the original creditor was dead, and the attorney was obliged to get an administrator appointed before he could proceed with the prosecution. The fact that he was himself appointed the administrator, makes no difference. His administration was *ancillary* to the original and general administration of the estate in Maryland, for this particular debt: and although, had there been other assets found in this state which would have been subject to the rules applicable to a general administration, the proceeds of this bond would not have been subject to such rules, but would have all gone to the respondent, subject to such just claims and liens upon it as might exist in favor of the appellant. It was the duty of the surrogate, when these facts appeared, to dismiss the proceedings before him, and leave the respondent to pursue such remedy as the law afforded him in the courts of record, which were ample to secure his rights, and those of all others connected with the transaction in question.

If the foregoing views are correct, the decree of the surrogate should be reversed, with costs of the appeal, and the proceedings be remitted, &c.

Ordered accordingly.

[MONROE GENERAL TERM, March 2, 1857. *T. R. Strong, Welles* and *Smith*, Justices.]