By the Court — Bosworth, Ch. J.
The complaint does not allege, nor was it proved that Feely, Mahoney or McLaughlin made “ application ” as a creditor of Harmon H. Gunter, for payment of the debts alleged to be due to them. (3 R. S., 5th ed., 204, § 18, sub. 1.)
It is only on such an application being made that the Surrogate can act under that section.
The complaint alleges that the “ administratrix was duly cited # * to show cause at the Surrogate’s office,” &c. This is denied by the answer, and no evidence of the fact was offered.
The complaint also alleges that, “ upon reading and filing proof of the due service of the said citation upon said administratrix personally, no one appearing to oppose, and upon due proof of the rendition of the services,” and “ of the value .thereof,” it was ordered and adjudged, &c, “ pursuant to the statute in such case made and provided.”
The answer denies that either Feely, 'Mahoney or McLaughlin had rendered the alleged services or had any claim or debt, and also denies that the Surrogate, duly or pursuant to the statute, adjudged, &c. It does not otherwise deny the allegations of reading and filing of proof of due personal service of the citation, or due proof of the rendering of the services.
The complaint does not state what the “ proof” of service of the citation was, of what it consisted, how or by whom made, so as to enable the Court to know the nature of it, or what it legally tended to establish.
If it can be said that the Surrogate obtained jurisdiction of the administratrix, and of the subject matter, by reason of anything appearing in the case, it is because the answer does not deny the allegation, “ upon reading and filing proof,” &c.
The complaint does not state when and where the proof was read or filed. The complaint states that the citation *302 required the administratrix to show cause “ on the 8 th of March, 1858, at 11 o’clock, A. M. and “ that, on or about the day and'year aforesaid, upon reading and filing proof of the due service of the citation,” &c.
The answer, therefore, cannot be said to admit that this “ proof,” whatever it was, was read and filed on the 8th of March, 1858, because that is not alleged. That it was read and filed on the 9th, is as consistent with the allegation in the complaint as that it was filed on the 9th.
I think, therefore, that the admission is not of the truth of an allegation sufficiently full and definite to enable the Court to see that the Surrogate acquired jurisdiction, assuming it to be true, in the natural and fair meaning of the words of which it consists.
The plaintiff should show, that on the application of these alleged creditors, a citation was issued, and Avhat it was, and either the fact of the service, or the proof of its sendee which was presented to the Surrogate.
If the proof presented to him was legal in its character, •and established a service which gave him jurisdiction of the administratrix, then I think that his decree must be treated, in this action, as valid, though no evidence be given that he, in fact, received proof of the rendering of the services and of the condition and extent of the assets.
The subject matter being within the jurisdiction of the Surrogate, if it be shown that he acquired jurisdiction of the parties, his decision is conclusive, except upon an appeal from his decision.
The cases cited in The People of the State of Michigan v. The Phœnix Bank of N. Y., (4 Bosw., 379-381,) sustain this proposition.
Even if no proof of the claims of the alleged creditors was taken by the Surrogate, his decree cannot be avoided collaterally for that cause. If it could be, then it would not be enough to prove that witnesses were sworn and examined before the Surrogate; without showing, in addition, that the testimony related to the matter before him, and presented something for the judicial mind to consider, *303 and this would be virtually retrying the proceeding on its merits in a collateral action.
If enough be shown to make it affirmatively appear that the Surrogate acquired jurisdiction of the person of the administratrix, in the proceeding before him, I am of the opinion that the decree must be treated as obligatory, in this action.
But a new trial should be granted, because enough was not proved or admitted to establish the fact that he acquired such jurisdiction.
The proof, as to the contents of the executions, was meagre. The attorney testified that he used “the ordinary printed blank executions, directed to the Sheriff of this county.” He says, “I put the title I have mentioned in each of the collections.” The only title he had mentioned is stated in the further testimony, viz.: “I told the title of the case to Mr. Kipp, ‘In the matter of the claim of Feely, Mahoney and McLaughlin against Adeline Gunter;’ we searched under that title.” He says, “I directed him to return these executions to the office of the Olerk of the Supreme Court of the City and County of Hew York. I signed them as attorney, and tested them in the name of T. W. Clerke, one of the Justices of the Supreme Court.”
It is difficult to determine from this evidence what was the form of this execution.
The form of the execution is prescribed by the Laws of 1837, p. 535, § 64; and Laws of 1844, p. 91, § 2. Ho other volumes of the Session Laws have been cited relating to this point. In 3 R. S., (5th ed.,) p. 366, § 18, the 64th section of the act of 1837 is inserted, but at the foot of the page is a note, which states the fact that this 64th section was repealed in 1844, but that note does not state the alteration made by the act of 1844, as to the form of the execution.
The 2d vol. of the 4th ed., p. 421, §§ 17,18 and note at the foot of the page, are equally obscure in their statement of the law.
It should appear that the executions issued, complied, *304 in the substance of the contents, with the requirements of the statute.
Unless there be some statute on the subject, which has not been called to our attention, it does not appear that the executions alleged to have been issued, conformed in form or substance to the statute; as the only statute regulating the matter, so far as we are at present advised, is that of 1844.
For the reasons stated, I think a new trial should be granted, with costs to abide the event.
Robertson, J.
The sole foundation of the plaintiff’s claim is an order of the Surrogate of Queens county, reciting the issuing of a citation by him, to show cause, on a previous day, before him, why he should not decree payment, by the defendant, Mrs. Gunther, of certain debts claimed by three persons severally, for services separately rendered by them, at the request of the intestate, whom she represented, and the due proof, before him, of the service of such citation upon her personally. Such order then adjudges that such defendant pay absolutely to such persons severally, separate sums of money. There was no other proof and no admission of the making of any application to such Surrogate; of his issuing any citation; of the service of such citation, or of any inquiry or proof before such Surrogate. Unless this court can, from such order, presume, prima facie, those facts, so as to sustain the jurisdiction of the Surrogate, over both the subject matter and person, the plaintiff’s case was not made out.
As the application to the Surrogate, if made, was so made before eighteen months from the time of the appointment of the administratrix, (2 R. S., 92, § 52,) it must be assumed to have been made under the provision of the statute allowing a decree- for the payment of debts at the end of six months from that time. (2 R. S., 116, § 18.)
It has been settled that the Surrogate’s Court is entirely a creature of the statute, and of inferior and limited jurisdiction, and therefore his power to make any decree, *305 depends upon his having jurisdiction of the subject matter and acquiring jurisdiction of it and the person, and proceeding in conformity with the statute. (Dakin v. Hudson, 6 Cow., 221; Bloom v. Burdick, 1 Hill, 130; Corwin v. Merritt, 3 Barb., 341; People v. Barnes, 12 Wend., 492; People v. Corlies, 1 Sandf., 228.) The authority of the Surrogate to decree the payment of debts is limited. Ho general jurisdiction is conferred on him to adjudicate whether a debt is due as between the parties. (Fits Patrick v. Brady, 6 Hill, 581; Magee v. Vedder, 6 Barb., 352; Wilson v. Baptist Educ. Soc'y of N. Y., 10 Barb., 308; Disosway v. Bank of Washington, 24 Barb., 60.) It is true, some decisions in the Surrogate’s Court of Hew York county, intimate that the Court has power to pass on a debt, in decreeing final distribution. (Hall v. Bruen, 1 Bradf., 435; Babcock v. Lillis, 4 Bradf., 218.) Those decisions are undoubtedly correct, in reference to such proceeding in rein, by which the rights of all parties are disposed of, in the fund in the hands of the administratrix, (2 R. S., 95, § 71;) but that principle does not dispose of the question of a right to absorb, by a previous judgment, all the funds of the estate. So far as such decisions conflict with the well reasoned opinion in the case of Disosway v. The Bank of Washington, (ubi. sup.,) and the authorities cited in it, I think they must yield.
The power of passing upon a claim, by the Surrogate, and decreeing its payment absolutely, in advance of a final settlement of the estate, would give an applicant to him immense advantages over every other mode of establishing a claim against the estate. In the final distribution of the estate, unliquidated claims are placed last. (2 R. S., 87, § 27, 1st ed.) If a claim is presented to an administrator and rejected, unless an action at law is brought in six months, the claim is barred as to any funds distributed to claimants of inferior degree, or legatees. (2 R. S., 89, §§ 38, 39.) In an action against a representative of a decedent, he has a right to show debts of a prior class unsatisfied, and judgment can only be rendered for the *306 residue of the assets applicable to such claim, after paying those prior ones. (2 R. S., 88, § 31.) Ho execution can issue upon any judgment in a court of law, against a representative, until au account is rendered, or the Surrogate orders it, and he is only to allow execution for such sum as may be a just proportion of the assets applicable to such judgment. (§ 32.) An order to show cause is to be applied for, on which the Surrogate is to make the order for applying the assets, (2 R. S., 116, §§ 19, 20,) and it was considered necessary to provide expressly that such order should be conclusive evidence of assets. (2 R. S., 116, § 21.) Was it intended that all these barriers for the protection of the estate, should be thrown down in case of an application to pay a debt six months after the grant of letters of administration ? Would the payment by the administratrix be a defense to an action by others against her or on her bond? If so, by mere collusion, not always easy to be proved, where craftily managed, all the security of other creditors might be swept away. It is claimed in this case, that the adjudication against the administratrix is conclusive that the debt was due, that either there were no others entitled to a preference, or there were assets sufficient to pay all, and that any inquiry as to the propriety of issuing an execution against the assets was unnecessary; the statute having enabled them to have á decree against an executor docketed, (Sess. Laws of 1844, ch. 104, § 2,) and an execution issued thereon, as though the same were a judgment of the Court of Common Pleas.
In regard to legatees, it is provided that the Surrogate shall ascertain that thete is at least one-third more assets than is sufficient to pay all debts, legacies and claims against the estate then known: He might, in his discretion, allow any portion of any legacy necessary for the support of the legatee, upon bonds of indemnity. (2 R. S., 98, § 83; Seymour v. Butler, 3 Bradf., 193.) Was it intended that there should be no such protection in case of debts ?
If an application was necessary to give the Surrogate *307 jurisdiction generally, there should have been some extrinsic evidence that such application was made; and the mere making of a decree is no evidence that an application was ever made. If the application, however, was made, it was necessary to serve the citation to acquire jurisdiction of the person. If any evidence of such service was before the Surrogate, possibly his decision upon its sufficiency was conclusive, and in this case the Surrogate certified that he had proof of such service; this was at least prima facie sufficient. But there is no evidence that any allegations or proofs were produced to justify the order of the Surrogate; there is no certificate to that effect in such order. It does not follow, in my view, that because it is necessary to show that the Surrogate took proof as to certain facts, this Court can inquire collaterally into the validity or legality of his decision. His own decision that the evidence before him established certain facts, and perhaps even that he had evidence to establish • them, might be sufficient to preclude inquiry into the sufficiency of such evidence, or even the fact that it had been taken. In Hovey v. Smith, (1 Barb., 372,) it was recited in the decree that it appeared that a preference of .some debts over others was beneficial to the estate, and it was held conclusive of that fact. Without some evidence to the contrary, non constat, but that the Surrogate held he had power to decree payment of a claim as a debt upon failure of the party to appear, without any inquiry. The order produced certainly sustains that view, and yet- he as certainly had no such power. There must be some shadow of inquiry to justify the act, something to show that the Surrogate thought he had evidence before him to warrant Ms order. In Superior Courts, no. judgment is given against a party by default, unless on a written instrument, without some proof, (Code, § 246,) and in Justices’ Courts it is expressly required, (Code, § 64, subd. 8.) Unless, therefore, it appeared to the Surrogate’s satisfaction that the debt was proved without opposition, or admitted, and that there were assets enough to pay it and all other debts *308 of equal degree, he ought not to have made the decree. Merely having jurisdiction of the subject matter, and obtaining it over the person by service of the citation, does not give the Surrogate a right to make any decree for the payment of any sum, however great, against an executor; he must exercise some judicial functions, besides' giving judgment; in other words, exercise jurisdiction as well as possess it. (Germond v. People, 1 Hill, 343.) This principle was recognized in Brittain v. Kinnaird, (1 Brod. & Bing., 432,) cited in The State of Michigan v. Phenix Bank, (4 Bosw., 380.) Justice Dallas in that case said: “ He (the magistrate) is hound to inquire as to the fact, and, having inquired in regard to it, his conviction is conclusive of it.” In Supervisors of Onondaga v. Briggs, (2 Den., 26, 33,) cited in the same case, Bronson, J., says: “ A power to hear and determine necessarily carries with it one to make the judgment obligatory.” A judgment without affording a party a hearing, is void. (People v. Soper, 7 N. Y. R., 428.) An inquiry into jurisdiction is always admissible. (Chemung Canal Bank v. Judson, 8 N. Y. R., 253; Dobson v. Pearce, 12 N. Y. R., 156.)
As, therefore, it does not appear on the face of the order, or by extrinsic evidence, if that is admissible, that the Surrogate made any inquiry on the return of the citation, his decision was not binding.
The testimony as to the form of the execution was also not clear. By statute, the Surrogate’s certificate is to be filed with a clerk of a Court of Common Pleas, and entered on the docket of that Court. (Laws of 1844, ch. 104, § 2.) This does not make it a judgment of that Court. (Davies v. Skidmore, 5 Hill, 501,) although execution is to be issued as if it were. But such execution must recite the decree and its docket, and then command the Sheriff to levy the money. Bo such form seems to have been adopted. The attorney testified he used “ the ordinary printed blank executions, directed to the Sheriff of Bew York County,” “ to collect in the matter of the claims” he had just stated. They were tested in the name of a Justice of the Supreme *309 Oourt, and directed to be returned to a Clerk of that Court. The Code requires an execution to state the Court, the county where the transcript is filed, the names of the parties, the amount of the judgment, the amount due, and the time of docketing; there is no evidence that this was done. ÍTo reference seems to have been made in them to a County Oourt or Court of Common Pleas, and the Sherriff, on examining them, would not have been able to find any warrant in law for levying an execution issued, “ in the matter of certain claims,” out of the Supreme Court, particularly as there was no statement of the decree or its docketing. Whether the County Courts are successors of the Courts of Common Pleas, under the new Constitution, (Art. 6, § 14,) or not, and whether the Statute of 1844 is repealed for want of the proper Court in which to file the Surrogate’s certificate, are questions which may hereafter arise, in case the copies of the executions taken by the attorney shall be hereafter produced. The issuing and return of a proper execution is a necessary jurisdictional fact to the assignment of the bond, if the Surrogate acts ministerially in making it. If he acts judicially, the defendants should have had notice of the application.
For the defect of proof of the proceedings before the Surrogate, on making, the first order, and of the contents of the executions, or else the defect of the executions themselves, I think this case should go back for a new trial.
A new trial must be accordingly ordered on the exceptions, and the verdict set aside, with costs to abide the event.