By the Court.*—Robertson, J.
Beyond the personal responsibility of an administrator, the creditors of an intestate who has no real estate have no other security for the faithful distribution of the assets of the deceased among them, than his bond, given on issuing letters of administration, in double the value of the estate. In case of the insolvency of the intestate, if one creditor could, get judgment on such bond for his own benefit alone, the whole security might be exhausted by a few, to the exclusion of the rest.
An administrator has a right, in an action at law against him, to show that there are unsatisfied debts of a prior class, or unpaid debts of the same class, as that for which such suit is brought (2 Rev. Stat., 88, § 31). In such case, judgment can only be rendered for whatever assets may remain after satisfying debts of a prior class, and be a just proportion of debts of the same class (15.). An execution can only issue against an administrator, after rendering and settling an account of his administration, or on the order of the surrogate who appointed him (2 Rev. Stat., 88, § 32; Id., 116, § 21). After such account rendered, execution can only issue for such sum as may have appeared on the settlement of the former, to be a just proportion of the assets applicable to such judgment (15.). The judgment creditor may apply to the surrogate for an order to show cause why such execution should not issue (2 Rev. Stat., 116, § 19).
It is contended in this case, however, that another provision in the Revised Statutes gives a surrogate authority to decree the absolute payment of a debt, without a judgment, although contested, and without any account rendered or any inquiry into the condition of the estate, or amount of claims of a prior or the same class. And that on the decree so made, the creditor in whose favor it was made, has a right for his own exclusive benefit, to recover the amount due, upon the administrator’s bond.
That provision permits a surrogate, after six months from the time of granting letters of administration, to decree payment of a debt of the intestate, or a proportional part, and one year after such grant, the payment of a legacy, or its just proportional part (2 Rev. Stat., 116, § 18).
*128 The first question that arises, is whether the surrogate can try on such an application the merits of a disputed claim, and decree its payment on simply determining it to be due. If he can, he has far superior powers to a comt of law, in which an execution cannot issue until after an accounting, and then only for a proportional part of the assets. This question is fully and ably discussed and decided in the case of Wilson v. Baptist Educational Society (10 Barb., 308, 316). It had been previouslyanalysed by the vigorous mind of the late Surrogate Ogtoex in The matter of Kent (Dayton’s Surrogate (1st ed.), App., p. 7; ed. 1855, p. 507). McGee v. Vedder (6 Barb., 352); Jones v. Mason (5 N. Y. Leg. Obs., 124); Disosway v. Bank of Washington (24 Barb., 60); Andrews v. Wallege (8 Abb. Pr., 425; S. C., 29 Barb., 350); Mills v. Thursby (11 How., 162); sustain the same principle ; and lastly, the decision of the supreme court at general term in this very litigation holds the same. It is also held in these cases, that a dispute of the claim before the surrogate, a eontestatio litis, takes away his jurisdiction. It would be a daring innovation to try to stem the current of such authorities: in fact, it was not attempted on the argument.
It is claimed, however, that the surrogate did not lose his jurisdiction ; (1.) Because the claim had been passed upon and admitted by the administrator before the application. (2.) By the admission of assets by him, sufficient to satisfy it, and the illegality of all others. (3.) By reason of contradictions in the administrator’s affidavit, and his failure to appear at the adjourned day. It is also contended that he had a right to compel an account on the application of a creditor whose -claim had been admitted.
It will be necessary in the first case, to separate the jurisdiction of a surrogate to decree payment of debts, or allow the issuing of an execution after an accounting, from that which he exercises in decreeing payment of an admitted debt, separate from all others.
The Revised Statutes (vol. 2, p. 92, § 52) provide that after eighteen months from the time of his appointment, an administrator may be compelled to render an account of his proceedings, by order of th<? proper surrogate, upon the application of any person having a demand against the estate of the deceased, and even without such application. The contest of the claim *129 does not affect the jurisdiction, as the surrogate may order the account to he rendered on his own motion (Kidd v. Chapman, 2 Barb. Ch., 121). But the power of the surrogate on such an application ends with compelling the rendition of the account of proceedings (Westervelt v. Gregg, 1 Barb. Ch., 469; Smith v. Vankeuren, 2 Id., 473); unless the creditor has a judgment at law; when lie may, under the provisions before cited (2 Rev. Stat., 88, § 32; Id., 116, § 21), authorize an execution for a proper amount to be issued. Such an account is not intended to accompany or assist the provision before referred to, by which a debt may be ordered to be paid in six months after the appointment (2 Rev. Stat., 116, § 18), because it cannot be required until eighteen months after that time.'
Upon the application of an administrator, who has been cited to account by a creditor, or without it, the former may procure a final settlement of his account (2 Rev. Stat., 93, § 60; Id., 95, § 70), for which purpose he is to notify all persons interested ; only upon that settlement can the surrogate decree distribution, and determine any question as to debts, and the sums to be paid thereon (2 Rev. Stat., 95, § 71). There is no other statutory provision authorizing the surrogate to decree payment of specific debts, except the one previously referred to ’(2 Rev. Stat., 116, § 18).
The case of Hall v. Bruen (4 Bradf., 435) was upon an application by a creditor for an account-—not for payment of a debt. In Kidd v. Chapman (2 Barb. Ch., 414) the claim was in judgment. In Flagg v, Ruden (1 Bradf., 192) the claim was not passed upon, but the exercise of jurisdiction refused. In the matter of Phyfe (5 N. Y. Leg. Obs., 331) it was held that the surrogate had jurisdiction to inquire into an admission of a debt; but it was on an accounting—not a petition for its payment.
The effect on the surrogate’s jurisdiction of an admission by an administrator of a debt on its presentation, when made with a view of having it refused if disputed, is not fully settled by the authorities. In the matter of Phyfe (ubi sup) it was held that the fact of admission as well as of judgment could be tried, and for that purpose the surrogate had jurisdiction. In Johnson v. Corbett (11 Paige, 265) an admission of a debt was considered to have rendered its presentment for allowance *130 unnecessary; but it was not determined whether such allow, anee did any thing more than affect the question of costs in an action for it, or the payment or distribution of moneys for claims of inferior degree, for legacies, or among next of liin (2 Rev. Stat., 89, § 39).
If there was such, an admission in this case, either proved before the surrogate, or not denied, as gave him jurisdiction to decree payment, the supreme court at general term disregarded it, as having no effect where the claim was disputed. They held, however, that the defendant’s answer contained substantially a plea of the statute of limitations, and a denial of the validity of the claim. The decree of the surrogate, after reciting the application for a citation, its issue and service, the adjournment of the hearing, and the failure of the administrator to appear and render an account, declares that it appeared to him, that the claim was justly due to the plaintiffs, and that there were assets sufficient in the defendant’s hands to pay all the just debts of the decedent; and orders the payment of the claim. The application to the surrogate was not founded upon any admission of the debt, as a jurisdictional fact. But in what is called a sworn reply to the affidavit of the defendant, offered by way of answer in denial of the claim of the plaintiffs, a written admission was stated. This was offered in evidence on a previous day, without such sworn reply being put in, and when the defendant was present, hut such reply was_ put in afterwards, when he was absent. It does not, therefore, appear whether the súpleme court considered such admission offered as mere evidence to sustain the claim, or as sustaining the jurisdiction. Even in regard to it, however, the defendant anticipating it, alleged it to have been • given more than six years previous, and that it was given for a particular purpose. There also does not appear to have been any evidence taken before the surrogate as to the amount of the assets, or debts. The defendant’s answer in the surrogate’s court shows he paid over most of the estate to the next of kin long before he gave the admission, and that he refused the claim when it was first presented. It might, therefore, have been questionable whether a decree could have been made in the surrogate’s court, notwithstanding the admission, *131 without disposing of numerous questions of law and fact, affecting the liability of the defendant as administrator.
But a still more important question arises, whether there was any legal existence of a decree by the surrogate for the payment of the debt in question. The notice of appeal to the supreme court from the surrogate declares that the defendant appealed from the order of March, 1858, denying his motion to amend the minutes in such matter, and the decree of November, 1857, and to open the default therein, and from the whole and every part thereof. A question might have arisen on that, whether the words “ the decree of November” were joined by the previous copulative “and” with the order of March, 1858, on the minutes: the subsequent words, and to open, would seem to make it refer to the latter. The order to show cause was in the same form; and the petition of appeal attacks the validity of the order of November, 1857, but only specifies, as the relief sought, the setting aside the order of March, 1858, and other relief. The answer to it, however, denies the order of November, 1857, to be erroneous. But the judgment of the supreme court declares expressly that the November decree was appealed from as well as the March order, and reverses it without costs, because such reversal was founded on a want of jurisdiction in the surrogate. That judgment has never been recalled or modified, unless the order for a reargument, or that affirming the order of March, 1858, does so. The former, of course, left the judgment to stand, until the reargument was heard. The latter affirmed only the last order refusing to correct the minutes, or decree. It is true, it declared, as did the judgment of reversal, that the March order was appealed from, but not that the November decree was not appealed from. This court cannot correct or revise the solemn adjudications of the supreme court. That court, on the first argument, declared what was appealed from, consisting of an order, and decree; and reversed the decree without disposing of the order; and on a subsequent default pronounced an affirmance of it without interfering with their former judgment. While that court is still open for redress, it would be indecorous for us to pass upon the propriety of its records, if we could do so. If their judgment, or second order, does not conform to the views of the judges of that court, the *132 application should have been made then. This court cannot determine what was appealed from, when the tribunal has necessarily had jurisdiction to pass upon that question, and has done so.
Ho facts have been found by the learned judge before whom this cause was tried as to such appeal, judgment, and orders of the supreme court; and there is no contradictory evidence to impugn the records of them if any could be received : but he has found that the defendant appeared before the surrogate, and filed his affidavit in opposition to the claim of the plaintiffs, and has applied, as a conclusion of law, that the surrogate had jurisdiction of the claim, and to make the decree made by him. I think- this was intended to be in opposition to the principles laid down in the cases before cited.
I think the judgment should be reversed, and a new trial ordered, with costs to abide the event.

 Present, Moncrief, Robertson, and Monell, JJ.