KIDD and others, executors, &c. vs. CHAPMAN & DANIELS.

The mere neglect to pay a just debt, by an executor, when he is called on for payment, or even a refusal to pay, upon any other ground than that the debt claimed, or some part thereof, is not legally or equitably due, is not a disputing or rejection of the debt; within the meaning of the statute; so as to require the creditor to sue for its recovery within six months or be barred.

It is the duty of an executor, or administrator, when a claim is presented against the state of the decedent, to inform the claimant, explicitly, whether he means to reject or dispute such claim, or any part thereof, upon the ground that it is not justly due. Or, if he wishes further time to investigate the justice or legality of the claim, he should apprise the claimant of such wish; and should be prepared to admit or reject the claim, or to refer it, within a reasonable time thereafter.

It is not only in the power of the legislature to establish a summary remedy for the settlement of the estates of deceased persons, but it has authorized the surrogate to examine and decide as to the validity of all claims against the personal estate of the decedent, upon an application for the final settlement of the accounts of an executor or administrator.

The provisions of the revised statutes authorizing the surrogate to decree the payment of a debt, where the executors or administrators do not think proper to ask for a final settlement of their accounts, are not imperative.

Accordingly, where the claim of the creditor is intended to be contested in good faith, and where the same has in fact been rejected or disputed by the executors, or administrators, at the time it was presented to them for payment, and the claimant has neglected to proceed at law to establish the validity of his claim, it seems the surrogate, in the exercise of a sound discretion, may refuse to permit the claim to be litigated before him, in the first instance upon a direct application of the claimant for the payment of his debt.

The surrogate has the power to decree the payment of a judgment recovered against the testator, in his lifetime, although the executor does not ask for a final settlement of his accounts.

Although a judgment recovered against a testator is conclusive evidence of his indebtedness at the time of such recovery, so long as the judgment remains unreversed, still it is only prima facie evidence of indebtedness as against his personal representative; as it may have been paid.

It is not a proper exercise of discretion, on the part of a surrogate, to refuse to pro-

Kidd v. Chapman.

ceed further upon the petition of a judgment creditor, for the payment of his debt by the executors of the judgment debtor, where such creditor has sworn in his petition that the debt is still due, merely because the counsel for the executors says that his clients dispute the debt. But the answer to such petition should either deny the recovery of the judgment, or should state that it has been reversed, or paid either in whole or in part; and it should be verified by oath.

THIS was an appeal from a decree of the surrogate of the county of Rensselaer. In January, 1838, the respondents, Chapman and Daniels, recovered a judgment against A. Kidd, which was docketed on the 25th of the same month. Kidd died a few days afterwards, possessed of a large personal estate, and the appellants M. and J. Kidd, proved his will and took out letters testamentary thereon, as his executrix and executor. The judgment was for about $156; and the inventory of the personal estate of the decedent exceeded $20,000. Soon after, letters testamentary were granted to the appellants, and more than six months before the presenting of the petition of the respondents, to the surrogate, the attorney of Chapman and Daniels called upon J. Kidd, the executor, with the judgment, and requested payment thereof to his clients. The executor promised to call on his legal adviser the same afternoon, and to let the respondents' attorney know if it would be paid; but he never gave him, or his clients, any information on the subject. In November, 1839, more than eighteen months after granting letters testamentary to the appellants, a petition was presented to the surrogate stating these facts, and also that the judgment still remained due and unpaid, and praying that the executrix and executor might be called to render an account of their administration of the estate of the decedent, and might be decreed to pay the amount due upon the judgment.

Upon the return of the citation, the executrix and executor appeared, by their counsel, and disputed the debt and refused to pay the same; and they then insisted that the surrogate had no jurisdiction to compel them to pay such disputed debt until the same had been referred, or prosecuted to judgment against the executrix and executor. But they neither admitted nor denied the allegation, in the petition, that the personal

Kidd *v.* Chapman.

estate of the testator was more than sufficient to pay all his debts. The respondents thereupon proved their debt, by the production of the record of the judgment; and they proved the amount of the testator's personal estate, by the production of the inventory filed by the executrix and executor. They also proved the presenting of the judgment to the executor, and a request of payment, and his promise to see his counsel and to communicate the result of the interview, as above stated. The counsel for the executrix and executor thereupon insisted that the facts proved amounted to a rejection of the claim; and that, as it had not been prosecuted within six months thereafter, the claim was barred by lapse of time. The surrogate, however, overruled the objections, and made a decree for the payment of the amount of the judgment, and interest thereon as damages, with the costs of the proceedings. From this decree the executrix and executor appealed to the chancellor.

*S. G. Huntington,* for the appellants. I. A surrogate has no jurisdiction, not expressly given by the statute. (2 *R. S.* 154, § 1.) He has no power or authority to order or decree payment, by the executor or administrator, of a judgment rendered in the supreme court, against an intestate or testator, until such judgment has been revived against the executor or administrator by *scire facias,* or by a suit upon the judgment. (23 *Wend.* 477.) The revised statutes do not give the surrogate any jurisdiction over, or power to enforce payment of judgments against decedents, by the executor or administrator. Neither do the revised statutes give to the surrogate power to enforce payment of judgments rendered against executors or administrators; but they only give him authority in such cases to call the executors or administrators to account; and upon such accounting, to determine the amount to be paid, as it respects assets, and to direct an execution to issue for that amount out of the court in which judgment was rendered. (2 *R. S.* 29, § 32.)

A writ of *scire facias* to revive a judgment will lie, in favor of a creditor, against the executor or administrator of the debtor. (2 *R. S.* 477, § 2.) To this action, the executor or administra-

tor may plead several matters as a defence. (*Dunl. Prac.* 1115. 1 *Chit. Pl.* 482.)

An action of debt may be brought on the judgment against the executor or administrator, to which he may plead several matters by way of defence. (1 *Tidd's Prac.* 596. 1 *Chit. Pl.* 103, 104, 481.)

To an action of debt, or to a *scire facias* on judgment, the executor or administrator can plead *nul tiel* record, release, that the debt was levied by *fi. fa.*, *elegit*, or *ca. sa.*, or *plene administravit.* Does the statute giving jurisdiction to the surrogate, give him power to try and examine the validity of any defence which the executor or administrator might plead or set up? and does it deprive the executor or administrator of any and all defences, which he before might have set up or pleaded? Are we to lose the trial by jury?

All orders and decrees of surrogates are to be enforced by attachment. (2 *R. S.* 155, § 6.) How is this order or decree to be enforced?

II. A surrogate has no power or jurisdiction to make orders or decrees, respecting the payment of any judgment; in whole or in part; except the judgment is against the executor or administrator. (*See* 2 *R. S.* 53, §§ 20, 21, 22, 23. *Id.* 29, § 32. 23 *Wend.* 477.) And then only by ordering execution to issue out of the court in which judgment was rendered. No account has been rendered or settled by the administrators. No decree for payment of any debt can be made until this is done. (2 *R. S.* 29, § 32.) There was no evidence before the surrogate of assets, except the inventory. It does not appear there were sufficient to pay debts. No account was rendered and none was called for. On the inventory alone the adjudication was made of sufficiency of assets. The statute contemplates suits at law against the executors and administrators. (2 *R. S. 2d ed.* 30, § 38 *to* 41. *Id.* 53, § 20 *to* 22. *Id.* 51, § 9. *Id.* 364, 365, 511, § 18.) The eighteenth section of the revised statutes, (2 *R. S.* 52, 53 ; *Id.* 154, § 1,) does not apply to this case.

First, a judgment is not a debt within the meaning of this

statute. (*See* § 20, *p.* 53.) Second, the payment of judgments is to be enforced by execution, out of the court in which judgment is rendered, and not by decree of the surrogate. (2 *R. S.* 53, § 20.) The surrogate has no power to decree payment of any debt or claim which is disputed, or has been rejected, by the executor or administrator, until it has been referred, or a suit at law has been commenced and a judgment obtained thereon against the executor or administrator.

I therefore contend that a surrogate has no power or authority to enforce the payment of a judgment against a deceased person. A judgment creditor must first obtain judgment against the executor or administrator, and then obtain an order from the surrogate calling upon the executor or administrator to account, and upon such accounting he will obtain from the surrogate an order or decree as to the amount due such creditor with reference to the amount of assets, and also a decree from the surrogate directing execution to be issued out of the court in which judgment was rendered, for the amount found due by him. This is the course to be pursued, by the judgment creditor, and is the only way in which the surrogate can interfere, where the executor refuses to pay the judgment.

The court in which the judgment is rendered is first to decide all questions in relation to the same, and as to what remains due and unpaid thereon, and then the surrogate is to adjudicate as to the amount for which the execution is to issue, with reference to the quantum of assets.

*H. Z. Hayner*, for the respondents. I. The statute declares that judgments against testators or intestates shall have a preference over other debts not in judgments, and shall be first paid, with the following exceptions. (2 *R. S.* 87, § 27, 1*st ed.* *Id.* 28, § 27, 2*d ed.*) Every executor and administrator shall proceed with diligence to pay the debts of the deceased, and shall pay the same in the following order : 1. Debts entitled to a preference under the laws of the United States. 2. Taxes assessed upon the estate of the deceased before his death.

3. Judgments docketed and decrees enrolled against the deceased according to the priority thereof respectively. (2 *R. S.* 87, § 27.) By this statute it clearly appears that the respondents were entitled to be paid before all ordinary creditors of the deceased. And the executor, when called upon to pay the judgment, does not refuse to pay it, nor does he reject it, or raise any question as to the amount due, or as to the validity or honesty of the claim, but he says he will see his counsel and let the creditor know. At two different times he repeats substantially the same story, but never proceeds any farther. This, as the counsel for the appellants insists, was substantially a rejection of the demand or claim by them, and ousted the surrogate of jurisdiction, and compelled the respondents to proceed by suit within six months, under the provisions of the statute, (2 *R. S.* 87, § 38,) or be forever barred from maintaining an action.

In respect to this claim of the appellants' counsel I shall make but two remarks. 1. The debt under consideration being in a judgment, is not such a claim as is referred to in the statute. The statute relates to an uncertain unliquidated debt, and not to a debt in judgment, which carries verity on its face. 2. The disputing or rejecting, referred to in that statute, is also a very different thing from what appears in this case. There must have been a distinct and explicit refusal to pay, on the part of the appellants, on the ground that the amount claimed was not due, or that the claim was dishonest, or that they were not liable to pay it. The tenor of the statute clearly shows this. (2 *R. S.* 89, § 38. *Clark* v. *Sexton*, 23 *Wend.* 477, 479.)

The rejection of the claim, and refusal to pay it, must also have taken place after the publication of a notice, by the executors, to present claims against the deceased. This was not done in the case under consideration. No such notice was ever published by the appellants.

II. If the refusal to pay the judgment was not such a rejection as would compel the respondents to bring a suit in order to save their rights, or in case the claim was not such an one as is contemplated in that statute, the surrogate had juris-

diction of the case. (2 R. S. 116, § 18. Nichols v. Chapman, 9 Wend. 452.) Section nineteen of the statute also shows how such a decree can be enforced. The surrogate may cause the bond of the executor or administrator to be prosecuted in the same manner as upon a final accounting. The respondents, at common law, would have had the right, perhaps, to issue execution on their judgment, tested the first Tuesday of February, 1838, before the death of Archibald Kidd, the defendant, and made returnable the first Tuesday of March, 1838, after his death. Executions can only be issued one month and made returnable the next, in the Troy mayor's court. This right or remedy could only have continued, therefore, for one month, and would have been an ungracious remedy; especially where the decedent left a large estate, as he did in this case.

But our statute has entirely taken away, this right, by declaring that no execution shall issue on any such judgment after the death of the party against whom the same was rendered, (2 R. S. 291, § 27, 2d ed. 9 Wend. 452.).

If a man dies after judgment, a writ of execution may be sued out against his goods in the hands of his executor without a scire facias, provided such writ bears teste before his death. (Grah. Prac. 897. 2 Bac. Abr. Ex'r, G. 2.) If no execution was thus issued, it was necessary to revive by scire facias; or an action of debt on the judgment must be prosecuted. To prosecute the action of debt would probably be a waiver, by the judgment creditor, of his preference to which the respondents in this case were entitled. The scire facias must be prosecuted within one year after the cause of issuing the same shall arise. (2 R. S. 576, § 2.) That cause is the death of the defendant in the execution. (Clark v. Saxton, 23 Wend. 479.) But either of these remedies would only have produced a judgment against the appellants, which must necessarily have caused considerable expense to the respondents, and no costs could have been recovered against the executors. (2 R. S. 30, § 41.)

The spirit of the whole statute, granting to surrogates powers and jurisdiction in respect to the settlement of the estates of decedents, shows that the object of the legislature was to fur-

nish facilities to attain this end with the least possible litigation or expense to the estate to be settled. Chief Justice Savage, in *Chapman* v. *Nichols*, (9 *Wend.* 456,) remarks: "I have not found any positive prohibition against a creditor prosecuting an executor or administrator, but the provisions of the revised statutes are tantamount to it. No costs can be recovered," &c. The revival by *scire facias* was not abolished, because it might in some cases be necessary to retain a lien on real estate and effect a sale thereof; but a question has been raised, whether even that process was not actually superseded. (12 *Wend.* 542.) But in this case there was no real estate. The only object then to be attained by a revival by *scire facias*, or the prosecution of an action of debt, would have been to obtain a judgment against the appellants so as to authorize the respondents to apply to the surrogate for an execution. This, however, is almost always nugatory and useless; as all the personal property of decedents is usually sold long before such application can be made. Thus, after all the expense of obtaining judgment against the appellants, by *scire facias*, or by debt on judgment, the respondents would have been driven to the same remedy adopted by them in this case, viz. an application to the surrogate for a decree for the payment of the judgment, and if it was not paid after decree made, the prosecution of the bond of the appellants, or proceeding by attachment as provided by the revised statutes.

THE CHANCELLOR. There is no foundation for the objection that the claim was barred, by the neglect of the respondents to bring a suit on their judgment within six months after it was presented to the executor for payment. The statute, (2 *R. S.* 89, § 38,) provides that if a claim against the estate of the decedent is exhibited to the executor or administrator and the same is *disputed* or *rejected*, and shall not be referred, the claimant shall bring his suit within six months, for the recovery thereof, or shall be barred from ever recovering the same. But it would be a gross perversion of the meaning of the statute to hold that what took place when the judgment

Kidd v. Chapman.

was presented to the executor for payment, was either a rejection or a disputing of the demand, within the fair intent and meaning of the statute on that subject. The mere neglect to pay an honest debt, by an executor, when he is called on for payment, or even a refusal to pay, upon any other ground than that the debt or some part of it is not legally or equitably due, is not a disputing or a rejection of the debt, so as to require the creditor to sue for its recovery within six months or be barred. For the executor may have many reasons for declining to pay a debt immediately, although he does not intend to question its existence and legality, or the propriety of its being paid out of the estate of the decedent. In the case of *Elliot* v. *Cronk's administrator*, (13 *Wend. Rep.* 35,) the administrator, upon the claim being presented to him, told the agent who presented it that he did not know whether the demand was correct or not; that he had not yet investigated the affairs of the estate, and that he would consult counsel and let the agent know his determination; but he did not afterwards make any communication on the subject. The court there held that the statute must be construed strictly, and that this was not a disputing of the demand, within the meaning of the statute; and that it would not have been, even if the administrator had not promised to let the agent know his final determination. A similar decision was made by the supreme court in the case of *Reynolds* v. *Collins*, (3 *Hill's Rep.* 36.) It is the duty of the executor or administrator, when a claim is presented against the estate of the decedent, to inform the claimant, explicitly, whether he means to reject or dispute such claim, or any part thereof, upon the ground that it is not justly due. Or if he wishes further time to investigate the justice or legality of the claim, he should apprise the claimant of such wish; and should be prepared to admit or reject the claim, or to refer it, within a reasonable time. Then the claimant will understand his rights; and if the claim is rejected, or is not admitted within a reasonable time, he will be authorized to bring a suit to establish such claim. He will then also be in a situation to ask for costs, if he succeeds in such suit. Here, as the judg-

Kidd *v.* Chapman.

ment was recovered but a few days before the death of the testator, it is wholly improbable that the executor wished or intended to dispute the validity of the claim; but he might, very reasonably, have wished to consult the attorney in the suit, in relation to the recovery of the judgment, and to ascertain whether the matter was to be further contested. The only question, therefore, is whether the surrogate had jurisdiction to decree the payment of this debt; without subjecting the judgment creditors to the useless expense of bringing another suit, at law, against the executrix and executor, upon the judgment, and recovering a new judgment thereon against them.

The only objection that can reasonably be made to the exercise of such a power by the surrogate, is that it might, in some cases, deprive the personal representatives of the decedent of the right to have the debt claimed established by the verdict of a jury, before it is decreed to be paid. That, however, is a matter resting altogether in the discretion of the legislature; especially where the executor or administrator, upon the presentment of the claim to him, does not think proper to deny its justice or legal validity; so as to make it the duty of the claimant to bring a suit at law to establish his claim, at the expense of such executor or administrator, or of the estate of the testator or intestate. It is not only in the power of the legislature to establish a summary remedy for the settlement of the estates of deceased persons, but it has unquestionably authorized the surrogate to examine and decide as to the validity of all claims, against the personal estate of the decedent, upon an application for the final settlement of the accounts of an executor or administrator. The 71st section of the article of the revised statutes relative to the duties of executors and administrators, in rendering an account, and in making distribution to the next of kin, declares that upon the final settlement of the account, if it shall appear that any part of the estate remains to be paid or distributed, the surrogate may make a decree for the payment and distribution thereof among the *creditors*, legatees. widow, and next of kin, according to their respective rights; and in such decree *shall* settle and determine all ques-

tions concerning any *debt*, claim, legacy, bequest, or distributive share; to whom the same shall be payable, and the sum to be paid to each person. (2 *R. S.* 95.) The only exception to this imperative direction, to the surrogate, to determine all questions as to debts or claims against the estate of the decedent, upon a final settlement of the accounts of the personal representatives, appears to be in the seventy-fourth section of the same article. That section provides, that if it appears to the surrogate that any claim exists against the estate, which is not then due, or upon which a suit is then pending, he shall allow a sum sufficient to satisfy such claim, or the proportion to which it may be entitled, to be retained for the purpose of satisfying such claim when due, or when recovered; or of being distributed according to law. (2 *R. S.* 96.)

The provisions of the revised statutes, authorizing the surrogate to decree the payment of a debt, where the executors or administrators do not think proper to ask for a final settlement of their accounts, are not imperative; and therefore where the claim of the creditor is intended to be contested in good faith, and where the same has in fact been rejected or disputed by the executors or administrators, at the time it was presented to them for payment, and the claimant has neglected to proceed at law to establish the validity of his claim, the surrogate, in the exercise of a sound discretion, may perhaps refuse to permit the claim to be litigated before him in the first instance, upon a direct application of the claimant for the payment of his debt. But the 18th section of the title of the revised statutes relative to the rights and liabilities of executors and administrators, (2 *R. S.* 116,) expressly declares that the surrogate shall have power to decree the payment of *debts*, legacies, and distributive shares, upon the application of a creditor at any time after six months, and upon the application of a legatee or distributee at any time after one year, from the time of granting of the letters testamentary or of administration. And in the case under consideration, I think the surrogate had power to decree payment of the respondent's judgment; al-

though the executor and executrix did not ask for a final settlement of their accounts.

It is true that although the judgment recovered against the testator, in his lifetime, was conclusive evidence of his indebtedness at the time of the recovery of such judgment, so long as it remained unreversed, it was only prima facie evidence of indebtedness against his personal representatives; as it might have been paid by the testator in his lifetime. And even if the judgment had been recovered against such representatives they might still dispute the existence of the debt, before the surrogate, by contending that it had been subsequently paid. But in neither case would it be a proper exercise of discretion on the part of the surrogate to refuse to proceed further upon the petition of the judgment creditor for the payment of such a debt, where the creditor in the petition had sworn that the debt was still due, merely because the counsel of the personal representatives of the decedent thought proper to say his clients disputed the debt. Even if it was proper to receive an oral answer by counsel, to a sworn petition which stated the recovering of the judgment, and that it was still due, and that the personal estate was more than sufficient to pay all the debts of the decedent, it was no answer to such a petition to say that the debt was disputed. But the answer should either have denied the recovery of the judgment, or should have stated that it had been reversed, or had been paid, either wholly or in part, by the testator in his lifetime, or by his personal representatives after his death; and if paid in part, stating the amount of such payment. And if the executrix and executor expected to satisfy the surrogate that it was a proper case for him to suspend the proceedings until the petitioner had established the debt against them, in an action at law, they should have verified their answer by oath, at least as to their belief.

Under the circumstances of this case, I have no doubt that it was the duty of the surrogate to proceed upon this petition, and to decree the payment of the judgment therein mentioned, with interest and costs, out of the estate of the testator in the hands of the appellants; without subjecting the petitioners to

the delay and expense of an action at law upon the judgment. The production of the record of such judgment was prima facie evidence of the debt claimed. And the inventory of personal estate, amounting to more than $20,000, was prima facie evidence that the funds in the hands of the personal representatives of the testator were sufficient to pay the amount proved to be due to the petitioners; in the absence of proof that any older judgments existed against the testator, at the time of his death, or that the fund in the hands of his executor and executrix was insufficient.

The decree appealed from must be affirmed with costs. And the appellants must pay to the respondents, interest upon the amount decreed, from the date of the surrogate's decree; as damages for the delay and vexation caused by this appeal. The decree is to be entered with the clerk of the county of Rensselaer; and may be enrolled and docketed in the supreme court, organized under the provisions of the new constitution, so that an execution upon the decree may issue out of that court; instead of having the proceedings remitted to the surrogate.