WESTCHESTER COUNTY.—HON. OWEN T. COFFIN, SURROGATE.—January, 1881.

### GLACIUS *v*. FOGEL.

*In the matter of the accounting of* HENRY PURDY *and* ELIZABETH FOGEL, *executors*, *&c.*, *of* HENRY L. FOGEL, *deceased*.

Upon an application by a judgment creditor for leave to issue execution, the Surrogate's Court will not entertain an objection that the judgment, as matter of law, is illegal, and ought not to be enforced.

An executor who pays legacies and debts in full, before ascertaining the whole amount of the claims of creditors, does so at his peril.

The fact that a debt of the decedent was secured by a mortgage of real estate will not justify the payment of legacies; and in case of a subsequent judgment for a deficiency on a foreclosure and sale of the mortgaged premises, the judgment creditor may compel the executor to account. And in such a proceeding, it appearing that the payment of legacies had exhausted the residue, *Held*, that the executor should be charged with the amounts of the legacies so paid, and the creditor is entitled to a decree for the payment of a *pro rata* share of the residue applicable to the payment of debts.*

* In Livingston *v.* Gardner (N. Y. County, August, 1878), it was *held*, that an executrix would not be ordered to pay a deficiency judgment recovered against her upon a mortgage executed by decedent, while her accounting as executrix was pending, although no notice of such accounting was given to the judgment creditor, it not appearing, from the papers, that the executrix had not advertised for claims, or that the notice of claim had been served on her within the statutory time. *It seems*, that knowledge of a claim by the representative of an estate does not avoid the necessity of its due presentation, or, if it be rejected, its presentation or reference within the time limited by the statute.

APPLICATION by a judgment creditor for leave to issue execution, &c.

The testator died in 1873, seized of certain real estate, which he had previously mortgaged to George C. Glacius to secure the payment to him of several thousands of dollars. The mortgage became due and payable in; January, 1874, when the mortgaged property was worth about $7,000, which was more than sufficient to pay the amount due and the expense of foreclosure. The executors paid the interest for several years; until, in 1879 Glacius foreclosed, by action in the Supreme Court, and the property not selling for a sufficient sum to pay the amount due, and costs, he obtained a judgment in December, 1879, for the deficiency, amounting to $2,631.74. He then commenced this proceeding to compel the executors to account and pay him the amount of his judgment. The executors accordingly filed an account, from which it appeared, among other things, that they had paid debts of the deceased in full, to the amount of $971, and that they had expended, pursuant to the provisions of the will, $4,361.42, towards and on account of the support of the family of the testator, and showing that the estate was indebted to them in the sum of $2,638.12.

It was objected on the part of the petitioner that the executors had erred in paying debts in full when there were not assets sufficient to pay all claims; and also that the amount so expended for the support of the family should not be allowed, to the exclusion of the rights of creditors.

HALL, BROWN & WESTCOTE, *for petitioner.*

W. S. SMITH & J. T. WILLIAMS, *for executors.*

THE SURROGATE.—It seems to me that my duties in this case, under the statute, are very simple. I am to ascertain if there are assets of the estate sufficient to pay the full amount of the judgment in question, as well as all other just debts of the deceased ; and if I do so find, then to make a decree directing such payments, and if it is found that there are assets, but not sufficient to pay in full, then to decree the payment of the proper *pro rata* proportion thereof.

It is claimed on the part of the executors that the judgment obtained by the claimant in the Supreme Court, is, as matter of law, unjust and illegal, and ought not to be enforced. There are two serious difficulties in the way of my entertaining these objections. *First*, this court, on such an accounting, has no power to try and determine a disputed claim, whether it involves a question of fact, or one simply of law. (Tucker *v.* Tucker, 4 *Abb. Ct. App. Dec.*, 428 ; 4 *Keyes*, 127 ; *Redf. Surr. Pr.*, 391.) It is worthy of note that Chancellor WALWORTH invariably held that Surrogates' courts had power to adjudicate disputed claims (Kidd *v.* Chapman, 2 *Barb. Ch.*, 414), but since the decision of the case of Tucker *v.* Tucker, settling the question adversely to the Chancellor's views, the case of Johnson *v.* Corbett is no longer an implied authority upon that point. If this claim rested in simple contract, the proper course would be to have a reference under the statute and thus have it adjudicated. But, *second*, the petitioner's claim has already been adjudicated by a tribunal to which this court is subordinate. It is now the judgment of the Supreme Court, and its

binding force, as such, cannot be inquired into or in any way questioned here. That court has ample control over its own judgments. In a recent case (Freeman *v.* Nelson*) I had occasion to hold, on application for leave to issue execution, that I had no power to determine whether the judgment sought to be enforced was obtained by fraud.

The case of Johnson *v.* Corbett (*supra*) proceeded upon the assumption that the Surrogate had power to adjudicate concerning a disputed claim. The law having been finally settled otherwise, it is, perhaps, unnecessary to say that I do not regard the general principles there settled as applicable to the facts of this case. However that may be, for the reasons I have stated, it is immaterial to determine.

The only remaining question is, does the account of proceedings disclose assets sufficient to pay the petitioner's judgment. It does not appear that there are any claims outstanding against the estate, other than that of the petitioner; hence, in this proceeding, as already stated, it is only necessary to look into the account so far as to see whether there are assets sufficient to pay it, and if not, how much there remains applicable thereto. It appears from the account filed, that there has been applied toward the support of the testator's family, the sum of $4,361.42. The testator had, in his will, provided for such support, and it was, therefore, a legacy for that purpose. It was objected that there were no vouchers produced for this large expenditure, but the executrix has since filed a statement, with an affidavit appended,

---

* Reported, *ante*, p. 374.

in excuse for the non-production of vouchers. It is not necessary, however, in the view I have taken, to determine whether such is a proper voucher, or a sufficient excuse for not producing others which might be requisite. It is abundantly settled that all debts must be paid before legacies. The bond and mortgage were outstanding at the death of the testator, and there existed a contingency that the real estate covered might not sell for enough to satisfy them, and hence it was the duty of the executors to retain funds sufficient to meet such contingency. This they did not do. They not only used the foregoing sum in payment of that legacy, but they proceeded to pay other debts in full. They, having wrongfully expended this sum of $4,361.42, in so far as this claimant is concerned, must be deemed, for the purposes of this proceeding, to have the same on hand, just as much as if they had squandered it in stock or other speculations, or in riotous living. As a result of the examination of the accounts, vouchers and testimony, I find that there is in the hands of the executors a balance of $2,444.23, without regard to the $971 which was paid in full to creditors, and which must be added to the amount due on the judgment in order to ascertain the *pro rata* share which said balance will pay. After deducting from this sum enough to pay the costs of this proceeding, and the executor's commissions, there will remain a sum sufficient to pay about sixty-four $\frac{4}{10}$ per cent. of the amount due on the claimant's judgment and interest; the latter amounting to $2,824.72 and the sum applicable towards its payment being $1,819; and he is entitled to a decree accordingly, with costs out of the fund.

No question is properly before me as to the mode of enforcing obedience to such decree, and I therefore refrain from the consideration of the subject.

Ordered accordingly.