and brother take per capita among themselves. The questions submitted in the conceded statement of facts are therefore answered by the surrogate in conformity with this opinion as follows:

Question 1: No.
Question 2: Yes.
Question 3: No.
Question 4: Yes.
Question 5: No.
Question 6: Yes.

Decreed accordingly.

---

(77 Misc. Rep. 655.)

### In re BAUERDORF.

(Surrogates' Court, New York County.    October, 1912.)

WILLS (§ 498*)—CONSTRUCTION—"ISSUE."

 The word "issue," when used in a will and unexplained by the context, means all descendants of each of the sisters and brother of decedent.

 [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1087–1089; Dec. Dig. § 498.*

 For other definitions, see Words and Phrases, vol. 4, pp. 3782–3792; vol. 8, p. 7693.]

In the matter of the accounting of Charles F. Bauerdorf, surviving executor of Kilian Heintz. Order to renotice decree for settlement. See, also, 138 N. Y. Supp. 673.

Hugo H. Ritterbusch, of New York City, for executor.
Richard M. Bruno, of New York City, for Elizabeth Barth.
Leon Lewin, of New York City, for Johannes Heintz.
Jacob E. Salomon, of New York City, special guardian.

COHALAN, S. The term "issue" in the third paragraph of the will is used by the testator in a general and unrestricted sense and all the descendants of each of the sisters and the brother are entitled to share equally in such part of the estate as he or she would have become entitled to upon surviving the life beneficiary. Drake v. Drake, 134 N. Y. 220, 32 N. E. 114, 17 L. R. A. 664; Soper v. Brown, 136 N. Y. 244, 32 N. E. 768, 32 Am. St. Rep. 731; United States Trust Co. v. Tobias (Sup.) 4 N. Y. Supp. 211.

Renotice decree for settlement.

---

(77 Misc. Rep. 602.)

### In re CARY'S ESTATE.

(Surrogate's Court, Cattaraugus County.    September, 1912.)

1. COURTS (§ 199*)—PROBATE COURTS—JURISDICTION—"ASCERTAIN."

 In Code Civ. Proc. § 2472a, as added by Laws 1910, c. 576, providing that the Surrogate's Court has jurisdiction, on a judicial accounting or proceeding for the payment of a legacy, to ascertain the title to any legacy or distributive share, to set off a debt against the same, and for that purpose to ascertain whether the debt exists, the word "ascertain" is used as equivalent to "hear, try, and determine," though in its com-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

monly accepted signification it means simply to become apprised of the existence of an undisputed fact.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 470; Dec. Dig. § 199.*

For other definitions, see Words and Phrases, vol. 1, pp. 530, 531.]

**2. STATUTES (§ 188*)—CONSTRUCTION—GENERAL RULES.**

Statutes should be construed according to the natural and most obvious import of the language employed, without resorting to strained or forced construction to limit or enlarge their operation.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 266, 267, 276; Dec. Dig. § 188.*]

**3. COURTS (§ 201*)—PROBATE COURT—ACCOUNTING—INCIDENTAL JURISDICTION.**

Under Code Civ. Proc. § 2472a, as added by Laws 1910, c. 576, defining the jurisdiction of the Surrogate's Court, that court has jurisdiction, on the petition of testator's daughter for an accounting by her husband, they being the executors of the estate, to determine the validity of an agreement between them for a voluntary division and distribution of the assets, specifying in detail the various items each should receive in full payment and settlement of their respective interests, and, further, that the daughter should quitclaim to her husband her interest in certain real estate, and release her rights in certain insurance on his life, and designating a trustee to take charge of the assets set off to the daughter, and, as subsequently modified, substituting the husband as trustee.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 86, 87; Dec. Dig. § 201.*]

**4. ACTION (§ 64*)—COMMENCEMENT—PROCEEDINGS CONSTITUTING COMMENCEMENT.**

Code Civ. Proc. § 416, provides that an action is commenced by the service of the summons. Section 2516 provides that, except where otherwise specially provided, a special proceeding in a Surrogate's Court must be commenced by the service of the citation issued on the presentation of a petition, but that, on presentation of a petition, the court acquires jurisdiction to do any act which may be done before actual service of citation. Section 2517 provides that the presentation of a petition is deemed the commencement of a special proceeding, but to entitle the petitioner to the benefit of this section a citation issued on the presentation of the petition must be served within 60 days. *Held*, that an action in which summons was served June 12th was commenced before a proceeding in Surrogate's Court for accounting by an executor on a petition filed June 10th, the citation on which was not served till August 3d.

[Ed. Note.—For other cases, see Action, Cent. Dig. §§ 725–734; Dec. Dig. § 64.*]

**5. ACTION (§ 69*)—STAY OF PROCEEDINGS—PENDENCY OF OTHER PROCEEDINGS.**

Where an action was commenced in the Supreme Court to determine the validity of an agreement between executors for a voluntary division and distribution of the assets before the commencement of a proceeding in Surrogate's Court for an accounting, the jurisdiction of the Supreme Court is retained to the exclusion of the Surrogate's Court, and the proceedings in the latter will be stayed till a decision has been rendered in the Supreme Court.

[Ed. Note.—For other cases, see Action, Cent. Dig. §§ 744–751; Dec. Dig. § 69.*]

In the matter of the estate of Charles S. Cary, deceased. Proceeding on petition of legatee to compel an accounting and payment of legacy. Decree entered.

Williams, Minard & Howell, of Buffalo, for petitioner.

Geo. W. Cole, of Salamanca, for executor.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

DAVIE, S. The will of decedent was admitted to probate by the Surrogate's Court of Cattaraugus county August 16, 1907, and letters testamentary issued on the same day to Frank Rumsey and Emma C. Rumsey, the executors therein named. The executors are husband and wife; she being a daughter and he a son-in-law of the decedent. No judicial settlement or intermediate accounting has been had. By the terms of the will decedent made provision for his widow, now deceased, bequeathed to each of the executors $20,000, to their son, Charles Cary Rumsey, $8,000, to be paid to him upon his becoming 21 years of age, to several others minor bequests, and gave the entire residue of the estate to the petitioner. She now files her petition, alleging that the other executor has had the exclusive control of the estate, and asking that he be now required to settle the estate and pay her bequests.

On the return of the citation issued upon such petition, the acting executor appeared and filed a written verified answer alleging that on the 30th day of December, 1911, the petitioner and the executor entered into an agreement in writing providing for a voluntary division and distribution of the assets of the estate, specifying in detail the various items each should receive in full payment and settlement of their respective interests in the estate. Such agreement, a copy of which is attached to the answer, further provided that the petitioner should quitclaim to her husband her interest in certain real estate and release her rights in certain insurance upon his life. This agreement also designated a trustee to take charge of the assets so set off to the petitioner for a period of five years, paying over to her from time to time the income, and at the end of such period the principal sum. This agreement was subsequently modified; the principal change being the substitution of the husband as trustee in place of the one originally designated. The answer further alleges that on the 12th day of June, 1912, the petitioner began an action in the Supreme Court in the county of Erie; a copy of the complaint in such action being attached to the answer herein. Such complaint alleges that she was induced to execute such agreement by false and fraudulent representations, made by the husband regarding the amount and extent of the estate, and demands judgment for an annulment of the agreement. Such action is still pending in the Supreme Court. Upon this state of facts the acting executor asks that this proceeding be dismissed or stayed until the termination of the action.

Two questions arise in this connection. First, has the Surrogate's Court jurisdiction to determine the question of the validity of this agreement? and, second, should an accounting be required during the pendency of the action?

[1] Section 2472 of the Code of Civil Procedure defines the general jurisdiction of Surrogates' Courts, and section 2481 specifies in detail their incidental powers. It has been invariably held that under the provisions of these sections the Surrogate's Court had no jurisdiction to determine a question of this character; such a controversy being exclusively within the jurisdiction of a court of general jurisdiction. Matter of United States Trust Co., 175 N. Y. 304,

67 N. E. 614; Matter of Wagner, 119 N. Y. 28, 23 N. E. 200. These jurisdictional provisions of the Code were, however, amended by the adoption of section 2472a, which became operative on the 1st day of September, 1910 (Laws 1910, c. 576). This section provides:

"The Surrogate's Court has also jurisdiction upon a judicial accounting or a proceeding for the payment of a legacy to ascertain the title to any legacy or distributive share, to set off a debt against the same and for that purpose ascertain whether the debt exists, to affect the accounting party with a constructive trust, and to exercise all other power, legal or equitable, necessary to the complete disposition of the matter. He must order the trial of any controverted question of fact of which either party has constitutional right of trial by jury and seasonably demands the same."

A careful study of the phraseology of this new section shows that it is not free from uncertainty and ambiguity. Considered alone, it might be difficult of interpretation. The power to "ascertain" the title to any legacy or distributive share was already possessed by the Surrogate's Court. The word "ascertain," in its commonly accepted signification, means, simply, to become apprised of the existence of an undisputed fact, and in this instance to learn who the conceded legatees and distributees are. The Surrogate's Court has always possessed that power as a necessary incident to distribution. It was evidently the intention of the Legislature, through the instrumentality of section 2472a, to enlarge the jurisdictional powers of the Surrogate's Court, and vest it with full authority to decide between conflicting claimants to any legacy or distributive share. It has used the word "ascertain" as being equivalent to "hear, try, and determine," and for that purpose the section provides that the Surrogate's Court "shall exercise all other power, legal or equitable, necessary to a complete determination of the matter," and, in order that the provisions of this section might not contravene any constitutional right of trial by jury, the concluding sentence attempts, at least, to provide for a jury trial in any proper case when seasonably demanded.

[2, 3] Statutes should be construed and interpreted according to the natural and most obvious import of the language employed, without resorting to strained or forced construction for the purpose of limiting or enlarging their operation. It was the evident intent of the Legislature, in the enactment of this statute, to enlarge the powers of the Surrogate's Court and give it full authority to determine all controversies arising over the title to any legacy or distributive share. Accordingly, were it not for the conditions hereinafter referred to, it would be held that this court had ample power, under the provisions of section 2472a, to determine the question of the validity of the agreement existing between the petitioner and executor and made for the purpose of effecting a voluntary division and distribution of the assets of the estate between them.

[4] The difficulty, however, in applying such conclusion to the present controversy, arises from the following facts. The petition in this proceeding was verified on the 10th day of June, 1912, and filed in the office of the surrogate the following day; but the citation issued thereon was not served upon the executor until the 3d day of August, 1912. On June 12, 1912, the petitioner verified her com-

plaint in the Supreme Court action, which, together with the summons, was served upon the acting executor on the 12th day of June, 1912; such action being brought for the purpose of obtaining the same relief, so far as the agreement is concerned, as is now sought to be obtained in this proceeding—that is, the determination of the validity of the agreement, and asking to have the same annulled and adjudged void and inoperative. The question then arises: Which was first commenced, the proceeding or the action?

The action in Supreme Court was actually commenced by the service of the summons upon the defendant June 12, 1912. Code Civ. Proc. § 416. A proceeding in Surrogate's Court is deemed commenced by the actual service of citation. Section 2516 of the Code provides that:

"Except in a case where it is otherwise specially prescribed by law, a special proceeding in a Surrogate's Court must be commenced by the service of a citation, issued upon the presentation of a petition. But upon the presentation of the petition, the court acquires jurisdiction to do any act, which may be done before actual service of the citation."

Section 2517 of the Code provides that:

"The presentation of a petition is deemed the commencement of a special proceeding, within the meaning of any provision of this act which limits the time for the commencement thereof. But in order to entitle the petitioner to the benefit of this section a citation, issued upon the presentation of the petition, must, within sixty days thereafter, be served, as prescribed in section 2520."

Taking the two sections together, we find that the commencement of any proceeding in Surrogate's Court is by actual service of citation, except in those particular cases where there is a legal limitation of the time within which such proceeding must be instituted. For illustration, in proceedings for the disposition of decedent's real estate for payment of debts, the law requires that such proceeding must be commenced within three years from the date of issuing letters of administration or testamentary. In such a case the filing of the petition is regarded as a commencement of the proceeding as specified in section 2517, above quoted. A proceeding to compel an accounting and payment of a legacy comes under the operation of the provisions of section 2516, and not under the provision of section 2517. Hence, the summons in the action having been served June 12, and the citation in this proceeding not served until August 3, 1912, it must be held that the action was first commenced.

[5] The principle is rudimentary as to jurisdiction that a statute conferring it on one court does not operate to oust the other courts before possessing it, since concurrent jurisdiction is not inconsistent. The Supreme Court concededly possessed jurisdiction to determine the question of the validity of this agreement before the enactment of section 2472a, and while this section bestows upon the Surrogate's Court jurisdiction to determine the same question, it does not divest the Supreme Court of the power it possessed in that particular. It simply gives the Surrogate's Court concurrent jurisdiction with the Supreme Court over controversies of this character. 1 Nichols, N. Y.

Prac. 125; Cooke v. State National Bank of Boston, 52 N. Y. 96, 11 Am. Rep. 667.

It has also been frequently held that, where two courts have concurrent jurisdiction of the same subject-matter, the one which first acquires actual control will retain the same to the exclusion of the other. 1 Nichols, N. Y. Prac. 125, 126; Rogers v. King, 8 Paige, 210; Groshon v. Lyon, 16 Barb. 461; Conover v. Mayor, 25 Barb. 513; Lewis v. Maloney, 12 Hun, 207; Schuehle v. Reiman, 86 N. Y. 270; Garlock v. Vandevort, 128 N. Y. 376, 28 N. E. 599; Ludwig v. Bungart, 48 App. Div. 613, 63 N. Y. Supp. 91; Westerfield v. Rogers, 63 App. Div. 18–24, 71 N. Y. Supp. 401; Matter of Ayrault, 81 Hun, 110, 30 N. Y. Supp. 654. In Rogers v. King the court says:

"If the same party who files a bill in this court against such executor or administrator subsequently cites him to account before the surrogate, the pendency of the suit here for the same object ought to be allowed by the surrogate as a valid objection to the proceeding there, in the nature of a plea in abatement."

In Conover v. Mayor, supra, the court says:

"The court first acquiring jurisdiction of a proceeding, its powers being adequate to the administration of complete justice in the premises, should retain its jurisdiction and confine the litigation to that forum. This will be done, not by interfering directly with the action of the other court, but by restraining the proceedings of the suitors."

In Lewis v. Maloney, supra, the action was brought by a legatee in the Supreme Court to recover his legacy, and subsequently, while the action was pending, he instituted a proceeding in the Surrogate's Court to require the executor to appear and render his account and pay his legacy, and it was held that the action in Supreme Court was a bar to the subsequent proceedings instituted before the surrogate.

In Schuehle v. Reiman, supra, the court says:

"Where the object of two legal proceedings is the same, convenience, as well as a proper regard for the rights of debtor and creditor, require, if possible, that the fund in which both are interested should be subjected to diminution by one litigation only, and the parties themselves spared the unnecessary labor and expense of conducting two controversies over the same matter. It would seem, also, that if both tribunals, whose interference has been invoked, have equal or concurrent jurisdiction, it should continue to be exercised by that one whose process was first issued."

In Garlock v. Vandevort, supra, the proceeding was first commenced in the Surrogate's Court, and the court in the opinion says:

"The surrogate's jurisdiction was equal to and concurrent with the Supreme Court, and, following the well-established rule in such a case, the Surrogate's Court, as the tribunal which first obtained jurisdiction of the subject-matter and of the persons, retained and should continue to exercise that jurisdiction."

In Ludwig v. Bungart, supra, the court reiterates and applies the rule, that:

"Where both tribunals have equal jurisdiction, the cause should be retained and disposed of in the forum where judicial action was first sought."

In view of these authorities, it is entirely apparent that the Supreme Court, having first obtained jurisdiction to determine the validity of

the agreement in controversy, retains such jurisdiction to the exclusion of the Surrogate's Court.

The petitioner, however, contends that, if this court should decline to entertain the consideration of the validity of the agreement, it should still require the executor to account, in order to determine the status of the estate, delaying distribution until the termination of the action in Supreme Court. It is undoubtedly true that one having originally an interest in an estate as legatee or distributee, upon filing his petition alleging such interest, is ordinarily entitled to an accounting, although the representative alleges an absolute assignment of such interest and an elimination of his rights in the estate, if the legatee denies the existence or validity of such assignment. Surrogate Ketcham in his opinion in Matter of Dollard, 74 Misc. Rep. 312, 133 N. Y. Supp. 1107, says:

"The law is that such release or assignment, if not questioned by the petitioner, is a bar to relief against the representative of the estate (Matter of Wagner, 119 N. Y. 28, 23 N. E. 200; Matter of Pruyn, 141 N. Y. 544, 36 N. E. 595); but, when the instrument asserted by the executor is alleged by the legatee to be void upon equitable grounds, fairly pleaded, it has long been held that the surrogate had jurisdiction to direct an account or to grant such other forms of relief as were dependent upon a claim of an interest in the estate."

In this instance the circumstances and conditions are somewhat peculiar. The relief sought to be obtained through the action in Supreme Court is the annulment of the agreement in controversy. The grounds upon which such relief is sought are the alleged false and fraudulent representations made by the acting executor to the petitioner. Such representation related to the size and extent of the estate. Hence the trial of the action in Supreme Court necessarily involves a determination of the extent of the estate. The acting executor must there show the details of his receipts and disbursements, or, in other words, he must there make a complete accounting of the estate. It must there be shown that the estate is of greater value than represented, or the agreement would be sustained. Such being the situation, it would seem that, while the surrogate may possibly still possess the arbitrary power to compel the executor to present his account, it would hardly be wise or conducive to an orderly determination of this controversy to do so. Such course might lead to confusing and conflicting results. It might be determined in the action that the estate was of greater value than represented, and that the agreement should be upheld; while in the Surrogate's Court it might be determined that the estate was less than represented by the executor to the petitioner to be.

In view of all these existing conditions, it should be held that the Supreme Court, having first acquired jurisdiction over the question of the validity of the agreement in controversy, should retain and exercise such jurisdiction until the termination of the action there pending, and that the accounting of the executor before the surrogate should be stayed until the trial and decision of such action. An order to that effect will be entered.

Decreed accordingly.