Matter of the Judicial Settlement of the Accounts of MUTUAL TRUST COMPANY of Westchester County, as Administrator c. t. a. of the Estate of LEWIS W. SPAULDING, Deceased.

(Surrogate's Court, Westchester County, June, 1920.)

Surrogates'    Courts — accounting — trial — set    off — legacy — jurisdiction — Code Civ. Pro. §§ 2490(11), 2510, 2735.

> Under sections 2490(11) and 2510 of the Code of Civil Procedure all questions of title to and quantum of a legacy or a distributive share of an estate are triable in the Surrogate's Court, and under section 2735 of said Code the surrogate must direct payment and distribution to those entitled, according to their respective rights.
>
> Upon the judicial settlement of the accounts of an administrator with the will annexed the court has jurisdiction to hear and determine the claim of the administrator that a non-resident son of the decedent has in his possession in another state a portion of the estate which though not turned over to the administrator should be taken into consideration upon the accounting, and if the facts justify, to set off or charge the same against the distributive share of the son.

PROCEEDING upon the judicial settlement of the accounts of an administrator with the will annexed.

Strang & Taylor, for Edward B. Spaulding.

Surrogate's Court, Westchester County, June, 1920.    [Vol. 112.

Maurice Hotchner (Richard Krause, of counsel), for Charles Spaulding.

Peck & Schmidt (J. Alvord Peck, of counsel), for administrator c. t. a.

SLATER, S. This is a proceeding for the final judicial settlement of the accounts of the administrator c. t. a. of the decedent. The persons interested in the final distribution of the estate are Edward B. Spaulding and Charles Spaulding, sons and beneficiaries of the decedent. The account charges Charles Spaulding with the sum of $7,652.51.

The facts presented upon the hearing herein are rather unusual. It is claimed by the accounting administrator and by Edward B. Spaulding that Charles Spaulding, who was cited and appeared by attorney herein, has in his possession in Massachusetts a portion of the estate of the decedent, which has not been turned over to the administrator, but which should be taken into consideration upon this final accounting.

It seems that the administrator c. t. a. had begun a discovery proceeding upon the allegation that there were certain assets in the possession of Charles Spaulding. The discovery proceeding is admittedly illegal because the court did not obtain jurisdiction of Charles Spaulding on account of his non-residence and failure to appear in the proceeding. See Code Civ. Pro. § 2675; *Wolf* v. *Union W. & P. Co.*, 148 App. Div. 623.

The question arises whether the court has jurisdiction in this proceeding to hear and determine the claim that Charles Spaulding has assets of the estate of his father and, if the facts justify that finding, to set off or charge Charles Spaulding with such assets against his distributive share in the estate. If the court is

without power, upon proof of that fact, then justice fails in the distribution of this estate.

The extent of the equitable jurisdiction of the surrogates of New York in the course of the settlement of the accounts of deceased persons is not doubtful prior to the Revised Statutes. Long prior to the Revised Statutes, courts of probate had enjoyed a limited jurisdiction to require representatives of deceased persons to file inventory and account. Jurisdiction of the original courts of probate over accounting proceedings and in the course of the distribution of estates was defined by the jurisdiction of ecclesiastical courts and later by chancery law. *Bevan* v. *Cooper*, 72 N. Y. 328; *Matter of Martin*, 80 Misc. Rep. 17; *Matter of Hermann*, 83 id. 283. A history of the early law is stated in *Ferguson* v. *Broome*, 1 Bradf. 10; *Matter of Thornburgh*, 72 Misc. Rep. 619; *Matter of Brick*, 15 Abb. Pr. 12; *Matter of Runk*, 200 N. Y. 447. As early as 1787 (chap. 38) the jurisdiction of the surrogates was placed on a statutory basis, according to the common-law jurisdiction of the like matters. Thus, this court has enjoyed the transmitted jurisdiction known to the common law. The Revised Statutes of 1830 perpetuated the principles and enlarged the jurisdiction, and the proceeding for settlement of accounts in Surrogates' Courts became a substitute of the former administration suit in chancery. Jessup-Redfield, 22.

The Revised Statutes provided for the effect of the decree, making it conclusive upon the matters embraced in the account against all persons cited or who appeared. Section 2742 of the Code of Civil Procedure seemed to enlarge the effect of such decrees. The power of the legislature to establish in the Surrogate's Court the process for the settlement of estates and to enable the court to decide on all claims and matters affecting estates seems not to have been

doubted (*Kidd* v. *Chapman*, 2 Barb. Ch. 414), but the jurisdiction of the surrogates has been a constant source of contention in the courts.

While the Surrogate's Court has, for many years, been one of limited jurisdiction, little by little the legislature has invested that court in accounting and in other matters with much of the general jurisdiction exercised in the old court of chancery in administration suits. *Matter of Kent,* 92 Misc. Rep. 113. Since 1837, the tendency of legislation has been to enlarge the statutory jurisdiction of the surrogates. *Isham* v. *Gibbons,* 1 Bradf. 78. In 1895, the Constitution recognized the Surrogate's Court as part of the judicial system of the state, but the jurisdiction was held to continue to depend on statute. *Matter of Carter,* 74 Misc. Rep. 1; *Matter of Connell,* 75 id. 574. Hostility seems to have been displayed toward the acquisition of a greater jurisdiction by the surrogates, and it may be the failure of the surrogates themselves to exercise and sustain their jurisdiction that was partly to blame, but in the end the lawmakers gave this court added power and jurisdiction.

Chapter 576 of the Laws of 1910 gave the Surrogate's Court jurisdiction upon judicial accountings to ascertain the title to any legacy or distributive share, to set off a debt against the same, and to exercise all other power, legal or equitable, necessary to the complete disposition of the matter. *Matter of Cary,* 77 Misc. Rep. 602; *Matter of Malcomson,* 188 App. Div. 600; *Matter of Mount Vernon Trust Company,* 175 id. 353; affd., 223 N. Y. 563.

The grant of jurisdiction to the court over accountings is always held to carry with it such powers, legal or equitable, as are incidental and material to an efficient exercise of jurisdiction. *Matter of Burdick,* 98 App. Div. 560; *Garlock* v. *Vandevort,* 128 N. Y. 374;

*Matter of Hilliard,* 160 N. Y. Supp. 514; *Matter of Hendel,* 106 Misc. Rep. 417; *Matter of Thompson,* 184 N. Y. 36; *Matter of Runk,* 200 id. 447; *Matter of Martin,* 211 id. 328.

The surrogate's jurisdiction to determine in accounting proceedings claims of third persons to property claimed by the estate was, prior to 1910, denied. *Matter of Thompson,* 184 N. Y. 36; *Matter of McLaughlin,* 158 App. Div. 952.

Under the former law, for the purposes of distribution, the surrogate had an incidental power to construe a will, but he had no jurisdiction to compel a legatee to restore an over-payment on a legacy. *Lang* v. *Stringer,* 144 N. Y. 275.

Jurisdiction of the court was further enlarged by statute in 1914 when the present Surrogates' Act was adopted. Section 2510 of the Code contains very broad provisions and was intended to be such. With these broad provisions, subdivision 11 of section 2490 grants to the court the right to exercise such incidental powers as are necessary to carry into effect the powers expressly conferred.

Thus, step by step, the jurisdiction of surrogates to pass upon controverted matters has been enlarged by statute. Section 2510 grants these powers. This is a very broad provision and was even intended by the revisers to have been more extended than decided in *Matter of Holzworth,* 215 N. Y. 700.

Thus these two sections were intended to make the jurisdiction of the court effectual to the full, equitable and complete disposition of all matters relating to the affairs of decedents and now all questions of title to and *quantum* of a legacy or distributive share are triable in this court. The power of the surrogate to try the question of a set-off of a debt due the estate from a distributee or legatee has now been set at rest. The

21

court, by his decree, must direct the payment and distribution thereof to the persons so entitled according to their respective rights. § 2735. The language of this section is clear and must be taken to mean that the surrogate is to determine to whom it is to be paid and how much is to be paid.

In 1915, the Court of Appeals, in *Matter of Watson,* 215 N. Y. 209, said: " Plainly the Surrogate's Court has jurisdiction to try and determine issues arising upon any contest respecting a debt alleged to be due by the accounting party to the decedent or by the decedent to the accounting party. With equal reason it should have jurisdiction to determine conflicting claims of ownership to personal property between an accounting party and his estate. The trial and determination of such issues falls far short of the exercise of general and equitable jurisdiction, and we think that the statute was intended to confer jurisdiction in both classes of cases." Citing cases.

In *Matter of Malcomson,* 188 App. Div. 600, Justice Dowling, in a clear cut opinion, expressed the court's view on the powers of surrogates. The case arose on a settlement of account and related to the validity of an assignment by a legatee. The power of the surrogate to make the order was denied. The court said: " It seems to me that the action taken by the surrogate comes clearly within the general grant of power and jurisdiction to him by the Legislature, and that as the proceeding in which the order was made is one of the eight classes of proceedings enumerated in the section in which such jurisdiction may be exercised, his order was warranted and valid. The present situation of this estate shows the wisdom of the grant of general powers to the surrogate to make such orders as justice requires to the end that proceedings may be completely disposed of in his court. Here a

legatee petitions that the executors be compelled to account. He shows that he has executed an assignment of all his interest in the estate to the executors but claims it was without consideration. * * * He also charges the executors with bad faith * * *. The executors deny these charges. * * * How can the surrogate determine the petitioner's standing in court, his right to file objections, * * * or direct the distribution of the estate, until it is determined whether the assignment is valid? * * * The very purpose of the grant of power and jurisdiction to the surrogate, both in 1910 and 1914, was to enable them, in the eight classes of proceedings enumerated in section 2510, to try and decide every issue, whether legal or equitable, which was necessary to be decided in order to make a final decree or order. Thus a proceeding * * * once begun in the Surrogate's Court, would proceed to a final order or decree therein, without being halted and final decision postponed in order that a suitable action might be brought in the Supreme Court to dispose of some question directly affecting the subject matter then pending before the surrogate. The assignment in question necessarily and vitally affects the disposition to be made of the executors' accounts and the distribution to be made of the decedent's estate. No decree or order could be made settling the account or directing a distribution until the validity of the assignment had been determined. My conclusion, therefore, is, that the surrogate had power to make the order appealed from."

In *Matter of Keeler*, 109 Misc. Rep. 476, an accounting proceeding, this court declined to assume jurisdiction because all the parties to a former transaction were not before the court. In the instant case, all parties are before the court, and equity would be a misnomer if a distributee could obtain his full distributive

share of an estate, while he still had in his possession assets of the estate. Having concluded that the court has jurisdiction and power to hear and determine the issue presented, the court took testimony.

I find that the following assets belonged to Lewis W. Spaulding; that they have been in the possession of Charles Spaulding, and that he has not transmitted them to the custodian and administrator of the estate, viz.: Moneys collected in the lifetime of decedent, being balances due on accounts stated, $430.25; coupons of stock collected, $181; value of two United States Steel Company bonds, $1,000 each; amount received from Mutual Trust Company, as proceeds of bank account, $1,005.88; certain securities of the Nevada Douglass Copper Company and the King Crowther Company of the face value of $2,700. These assets amount to $6,317.13. This amount, with interest from the death of decedent (June, 1911), is charged against the distributive share of Charles Spaulding as assets of the decedent already in his possession and enjoyment.

As to the bank account in the Mutual Trust Company and the law upon the subject. The deposit was made in the name of " Lewis W. Spaulding or Charles Spaulding," on March 13, 1907, and so continued. This was before the amendment to the Banking Law, chapter 247, Laws of 1907, effective April 30, 1907, formerly section 144 of the Banking Law, now Banking Law, section 249. *Matter of Bolin,* 136 N. Y. 177, is the law of this case. The *Bolin* case was approved in *Kelly* v. *Beers,* 194 N. Y. 49.

The courts, in *Matter of Mount Vernon Trust Company, supra,* and *Hayes* v. *Claessens,* 189 App. Div. 449, point out the distinction existing, by reason of the date of the deposit and the subsequent amendement to the Banking Law.

I am satisfied by the proof presented that the money in this account came at all times from the funds belonging to the decedent. Decree to be entered according to these views.

Decreed accordingly.