S. Samuel Di Falco, S.
The decedent, Arnold de Tolnai, died on January 14, 1947, a resident of Monte Carlo, Monaco, survived by his widow, Emilie de Tolnai, two sons, Charles de Tolnai and Victor de Tolnai, and two grandchildren, George Bevay and Charles Bevay, Jr., who are the children of a predeceased daughter of the decedent. Decedent’s widow died on July 1, 1952.
At Ms death, the decedent was the sole stockholder of Alpha S. A., a corporation which had been organized under the laws of Tangier, Morocco on June 1, 1939. About May 15, 1940, the decedent caused to be transferred to Alpha S. A. cash and securities wMch were deposited in the name of the corporation in safekeeping depots with the respondent Swiss Bank Corporation, New York Agency (hereinafter called the “Bank”). The Bank now holds in New York securities valued at $71,800 and cash balances of dollar accounts amounting to $50,708.42. *401 Securities valued at $59,730 are being held in London, together with a small cash balance. The Bank also holds a small cash balance in Canada, and a balance of Swiss franc accounts in Switzerland amounting to $13,480.
The decedent left a will dated October 12, 1946, the original of which remains on deposit with Notary Aureglia in Monte Carlo.
On March 27, 1952, letters of temporary administration on the estate of the above-named decedent, were granted by this court to the Public Administrator of New York County. Upon the petition of the public administrator verified July 30, 1952, this court on August 1,1952, made an order directing the Swiss Bank Corporation to submit to examination and to show cause why it should not deliver to the public administrator the amount of the cash balances and securities which it holds in the name of Alpha S. A.
The answer of the Bank after denying that it holds certain shares of stock described in the petition and after denying that the securities, any cash, credit balances therein alleged belong to the estate of the decedent, alleges as an affirmative defense that the ownership of the cash and the securities is vested solely in the Alpha S. A. and until jurisdiction of the said corporation is obtained, this court may not direct that the said funds and securities be turned over to petitioner.
After filing its answer, the Bank procured an order directing that the process of this court issue to all the interested parties, including the heirs of the decedent, Alpha S. A. and creditors of the decedent known to the Bank. Process was published and mailed to the parties cited. Upon the application of the Bank, the mailing of process to Alpha S. A. was dispensed with.
With the exception of Victor de Tolnai, the heirs of the decedent have appeared in the proceeding. A number of cited creditors also appeared.
Alpha S. A. has also appeared and has filed an answer denying that it claims any interest in the said property or the proceeds or value thereof standing to its credit with the Bank, and on deposit in New York and elsewhere. The answer alleges further that at the time of decedent’s death Alpha S. A. was the alter ego and nominee of the decedent, and that it has therefore directed the Bank to turn over said property to the petitioner. The answer concludes with the prayer that an order be made directing the Bank to deliver the aforesaid property to the petitioner.
It is not disputed that the decedent regarded Alpha S. A. as his own property which in effect it was of course by reason *402 of Ms ownership of all of the outstanding stock. A letter which he wrote to his son in 1940 demonstrates his own conception of his relationship to the corporation: “ Since (my last letter) I instructed the London Bank to transfer all deposits and accounts to New York (Swiss Bank). I wanted in this way to escape the danger (as Hungarian) that my property be sequested, i.e. the property is deposited under the Tangier Society Alpha in the U. S. and I can even as Hungarian dispose freely * * * Alpha is a share society which administers my property and wMch is protected by the big states. The London Swiss Bank has my deposits for Alpha in custody and I have the disposition rights ’ ’.
That the Bank tacitly agrees with this concept of Alpha S. A.’s position is evidenced by the fact that it prepared an estate tax return for the decedent describing the properties which it held for the account of Alpha S. A. as possibly includable in the taxable estate. The tax shown to be due was paid by the Bank from the funds of the corporation.
The Bank takes the position that this court does not have jurisdiction over Alpha S. A. despite the fact that the corporation has appeared in the proceeding by attorneys designated by persons elected as directors of the corporation at a stockholder’s meeting held in New York on June 28, 1955. There were represented at that meeting one son of the deceased, and two grandcMldren who together with another son are the only distributees of the estate, the deceased wife’s usufruct having terminated with her death subsequent to that of the testator. An expert on the law of Morocco testified that the meeting was validly held under the laws of Morocco and that the election of the directors was authorized despite the fact that the certificates of stock in Alpha S. A. remained in the possession of a notaire in Monaco.
The directors of the corporation have authorized the Bank to transfer the funds and securities held in the Alpha S. A. account to the public administrator as temporary administrator of the deceased’s estate. The Bank takes the position that authority of the directors to issue such instructions is lacking, but it offered no testimony to refute the views expressed by the expert called by the corporation.
Upon tMs record there are two bases for granting the application of the public administrator to compel the delivery of the property for if we view the corporation simply as the alter ego of the deceased the public administrator is entitled to take the account into his possession for administration and transmittal to the person entitled to ownership under the laws *403 of the domicile. Under the authorities the adoption of such a course is plainly permissible.
In Matter of Bauer (289 N. Y. 326) the testator left legacies of $10,000 to each of his two aunts and bequeathed the stock in a corporation in which he owned 1,980 out of a total of 2,000 shares to other persons. It was established that the deceased had regarded the corporation as his own during his lifetime and ‘ ‘ in many matters he completely disregarded the distinction between the corporate business and property and his private affairs and property.” (P. 331.) When other assets in the estate proved insufficient to discharge the legacies to the aunts the court, ignoring the corporate entity, directed payment of the legacies out of moneys in the corporate treasury. Like results were reached in Matter of Stukalo (7 Misc 2d 1042); Matter of Dillon (200 Misc. 147); Karp v. 2330 Ryer Corp. (55 N. Y. S. 2d 856).
Upon the authority of the cases cited the court holds that the property held for the nominal account of Alpha S. A. in actual fact is the property of the deceased and its delivery by the Bank to the public administrator is directed. However, to safeguard the interests of possible claimants the public administrator is directed to cause a citation to issue to all possible creditors of the corporation when the time comes to settle his account (Matter of Kahn, 179 Misc. 939). Compliance with this direction will provide adequate safeguards for the Bank as well as for persons having claims against Alpha S. A. if there are such persons in existence. The procedure directed is indicated because process in the instant discovery proceeding does not extend beyond the territorial limits of the jurisdiction unlike that in accountings in which the petitioner may resort to publication of the citation (Matter of Spaulding, 112 Misc. 317).
The court finds upon the evidence adduced on the hearings that the directors elected by the stockholders of the corporation on June 28, 1955 hold their offices legally and that the issuance of the instructions to the Bank to turn the property over to the public administrator was within the compass of their authority. For both of the reasons discussed the application is accordingly granted.
By reason of the fact that the relationship between the Bank and the deceased was that of bailor and bailee, its action in resisting the claim of the public administrator constituted the proper discharge of its duties under the circumstances disclosed. The expenses involved in taking the necessary steps to protect the interests of the depositor are chargeable to the *404 deceased (Bacon v. Fourth Nat. Bank, 9 N. Y. S. 435; Jessup v. Smith, 223 N. Y. 203). The court will entertain an application by the Bank upon the submission of the decree to fix the amount of its lien against the property to he delivered to the public administrator.
Submit decree on notice.